## Fouts v. The State.

The words, "with malice aforethought," are necessary in defining murder, either in the first or second degree, and in order to charge murder in the first degree, the indictment should also allege the killing to have been "willful, deliberate and premeditated," or that it was done in perpetrating some one of the crimes enumerated in § 2569 of the Code.

The distinction between murder in the first and murder in the second degree under the Code, defined.

An indictment alleging the killing to have been "willfully, feloniously and unlawfully" done, and also "*with malice aforethought*," is not sufficiently descriptive of the crime of murder in the first degree, but it is sufficient for the crime of murder in the second degree.

An indictment for murder in the first degree is not good, unless it shows the murder to have been committed in some one of the methods specified by § 2569 of the Code.

A good indictment for murder at common law, will not include murder in the first degree, under the Code.

Where the statute uses descriptive language to define an offense, that language must be followed in the indictment, or words of the same meaning must be used.

The words "with malice aforethought" do not include nor mean the same as the words "deliberate and premeditated."

A prisoner cannot be made to suffer the penalties of murder in the first degree under an indictment which is good only for murder in the second degree, nor can the jury go beyond the indictment by finding the defendant guilty in a higher degree than he stands charged.

The court charged the jury that if a design to kill was formed, "at the time the blow was struck with the knife, it is a willful, deliberate, premeditated killing, and therefore murder in the first degree;" held, that this is erroneous; that in order to constitute murder in the first degree, the design should be formed before the blow was struck.

Where insanity is set up as a defense to murder, it should clearly appear that the defendant was laboring under such a mental delusion as irresistibly and uncontrolably forced him to commit the crime.

Insanity cannot be set up as a defense to an indictment, unless it appears that the defendant's mind, at the time of the offense, was so deranged that he did not know the nature of the crime, or that he was so really deluded that he did not know he was doing wrong.

*Error to Warren District Court.*

*Opinion by* GREENE, J.    Pleasant Fouts, the plaintiff in

error, was indicted in Polk county, for the murder of his wife, Ruth Fouts, August 9, 1854. The venue was first changed to Jasper, and thence to Warren district court, where the prisoner was tried and convicted of murder in the first degree. He was sentenced to be executed December 15, 1854, but before that day the writ of error which brought the case to this court was granted. Several errors are assigned, all of which may be considered under three heads.

It is contended in behalf of the prisoner, that the indictment charges the crime of murder in the second degree only, and cannot justify a verdict and sentence in the first degree. The indictment contains four counts. The first alleges that Pleasant Fouts, &c., &c., " did willfully, feloneously, unlawfully and with malice aforethought, with force and arms, and with a certain knife, made of iron and steel, in his right hand then and there held, which knife has been destroyed or withheld by the said Fouts and cannot be found, make an assault upon one Ruth Fouts, then and there being in the peace of the state, and then and there willfully, feloneously, unlawfully and with malice aforethought with the knife in his right hand, then and there held, did strike, and thrust, cut and stab her, the said Ruth Fouts, upon the neck and throat; and the said Pleasant Fouts, with the knife aforesaid, by the striking, thrusting, cutting and stabbing aforesaid upon the neck and throat of her, the said Ruth Fouts, did then and there give unto her, the said Ruth Fouts, several, to-wit: two mortal wounds, one of the length of three inches, and of the depth of two inches upon the neck and throat of her the said Ruth Fouts, of which mortal wounds, she, the said Ruth Fouts, then and there in the county of Polk aforesaid, and in the township of Jefferson in said county of Polk, on the ninth day of August, in the year of our Lord one thousand eight hundred and fifty-four, did immediately die. And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Pleasant Fouts, did her, the

said Ruth Fouts, at the time and place aforesaid, and in the manner and by the means aforesaid, willfully, feloneously and unlawfully, and with his malice aforethought kill and murder against the peace and dignity of the state of Iowa, contrary to the statute in such case made and provided."

The second count is the same as the first, with a slight difference in reference to the wounds. It speaks of but one mortal wound, and describes that as being on the right side of the neck.

The third and fourth counts are also very similar to the first, only in reference to the wounds. The one describing only one mortal wound, as inflicted on the neck and throat. The other gives no description of the wounds, but charges that he struck, stabbed and cut her on the neck, throat and gullet.

We have quoted thus largely from the indictment and are thus explicit in reference to each count, so as to show whether it conforms sufficiently to the requirements of the Code in describing murder in the first degree. It will be observed that so far as the facts are charged; so far as the legal statement and descriptive words of the crime are given, each count is an exact copy of the first, and differs very slightly from that, only in locating and describing the wound from which death ensued.

The Code declares : " Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder ;" § 2568. Each count in the indictment then, although very redundant in words, very fully and amply describes the prisoner to be guilty of murder, for each charges him with having killed a human being with malice aforethought. The next point to be settled is whether it defines the murder in the first or only in the second degree.

Section 2569 : " All murder which is perpetrated by means of poison or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate any

arson, rape or robbery, mayhem, or burglary, is murder of the first degree, and shall be punished with death."

Now, the question arises, can this indictment under any fair construction of words, or analogy of meaning, come within any specification of murder in the first degree, as defined by this section. The nearest approximation the indictment can make towards coming within the meaning of this section, may be found in the words: " Or any other kind of *willful, deliberate and premeditated killing.*" " *Any other kind*," resembling in deliberate, premeditated willfulness, the act of murder by " poison," or " by lying in wait." At a glance, it must be seen that the indictment in this case describes no such " *deliberate, premeditated killing,*" nor is the murder alleged to have been committed in connection with the perpetration of any arson, rape, robbery, mayhem or burglary." The nearest it comes to any of these, is in alleging the crime to have been willfully, feloneously and unlawfully done with malice aforethought. But this " malice aforethought," is an essential element to murder of the second degree as well as the first. Such malice, would however, be implied under any charge of murder as defined in § 2569, as of the first degree.

In this connection, it may be well to see how murder of the second degree is defined by the Code, § 2570. " Whoever commits murder otherwise than is set ferth in the preceding section, is guilty of murder in the second degree, and shall be punished by imprisonment in the penitentiary for life, or for a term of not less than ten years."

This section, and this only, embraces the indictment in the present case. " Under § § 2568, 2570, the indictment may be appropriately classed as defining the crime of murder in the second degree.

While the indictment would be good for the crime of murder in the first degree, at common law, and perhaps good in nearly every other state in the Union, where that crime is defined by statute, still, under the Code of Iowa, it cannot be considered as comprising that first of crimes, which

Fouts **v.** The State.

exacts a forfeiture of life as its penalty. Under the Code of Iowa, it may be truly said, that our state has taken a very long stride towards the abolition of capital punishment. That severest penalty can only be inflicted in a very few well defined cases. That which would constitute a murder at common law, is not sufficient. A murder committed " willfully, feloneously and unlawfully," and also committed with "malice aforethought," is not sufficient. It must also have been committed under some one of the few and peculiar circumstances defined by § 2569, of the Code. To but few of the multiform cases of murder can the penalty of death be inflicted. Legislative intention is so obviously expressed on this subject, that there is no room for cavil. It is clear that a murder, charged under the circumstances, and motives designated by the indictment before us, is not a crime which our law makers could have intended to designate as a murder in the first degree. It is not charged to have been perpetrated by "poison" or "by lying in wait," or any other kind of willful, *deliberate* and *premeditated* killing ; nor charged as being in any way connected with the crimes of " arson, rape, robbery, mayhem or burglary." If committed with mere malice aforethought, with any other of the long list of crimes, it is not murder of the first degree. It is not punishable with death. It is murder in the second degree, and punishable only by imprisonment. In order to present a case of murder in the first degree, it is obvious that the indictment should have charged in addition to the "malice aforethought," that the crime was committed willfully, deliberately and premeditatedly.

The Attorney General argues, that as the indictment makes every necesary averment to cover the crime of murder in the first degree at common law, and as the greater includes the less offense, the indictment covers the crime of murder in the first degree under the Code. True, the greater includes the less degree of crime, but it is not true that a common law indictment for murder in the first

degree, is sufficiently comprehensive to include the greater degree of crime as defined by the Code. It may include all in the second degree, but it cannot include the first, for the obvious reason that the Code requires more to establish that crime in the first degree than is required at common law. Under the Code, additional facts must be alleged, as shown by § 2569. In a case like the present, the indictment must find that the killing was " deliberate " and " premeditated," as well as willful and with malice aforethought. In this instance, then, the Attorney General seeks to reverse the rule, and include the greater in the less offense. While the indictment would comprise every case of murder in the second degree under the Code, it does not comprise any case of murder in the first degree.

Again, it is claimed for the State, that the words, " with malice aforethought," embraces in substance the words, " deliberate and premeditated." We have already shown that there must be this malice aforethought in murder of the second degree. In the first degree the same malice aforethought must appear, and it must also appear that the killing was deliberate and premeditated. It must appear that the *killing* was premeditated as well as the malice. Malice may be aforethought, prepense or premeditated, and still there may be no deliberate, premeditated purpose to murder. The one may grow out of the other, but still differ from the other as much as cause differs from effect. Malice long harbored and encouraged by perverse minds, may lead to a deliberate and premeditated determination to destroy the object of its malevolence. Again, malice aforethought may exist without the slightest pre-determination to commit a murder or an overt wrong, until aroused by some unexpected incident, when the passion gets the better of the man and he inflicts the deadly blow, which a moment before or a moment after he would not have done. In the one case an object is attained, revenge is satiated, until again aroused in the remorseless spirit towards some

*33

other unfortunate victim. In the other, the culprit of impulse, regret, remorse and shame mark his brow, and prove that he would give worlds if he could restore the life he had taken in the heat of passion. Truly, the deliberate, premeditated murderer is worthy of death. He who rejoices in his deed of blood, he who is so far fallen below ordinary humanity, as to deliberate coolly on murdering a fellow being, is no longer worthy of social protection, and forfeits all claims to that life which he in his depravity would wrest from others. But he who murders without premeditation, and earnestly regrets his deed of rashness, has some claim upon humanity. His penitence should receive christian forbearance.

Hence, we say, this peculiar feature in our Code, in defining the degrees of murder, and in mitigating accordingly the degrees of penalty, is illustrative of progressive wisdom and of true Christian charity.

It is true as stated by the Attorney General, that the very words of the statute need not be followed, if words of the same meaning are used. But the great discrepancy between the indictment in this case and the law of murder in the first degree as defined by the Code, must be apparent to the most superficial inspection. In quoting from each, we have sufficiently illustrated their great disparity. Agreeable to the repeated ruling of this court in reference to indictments, this one cannot be supported by § 2569. When the question has been before us, we have uniformly decided that where the statute uses descriptive language to define a public offense, that language must be followed or words of the same meaning must be used. *State* v *Morse*, 1 G. Greene, 503 ; *State* v *Chambers*, 2 ib., 306 ; *Nash* v *State*, ib., 286. In many other cases we have in effect decided that the same language, or language substantially the same must be used.

We conclude, then, that the indictment in this case is good for murder in the second but not in the first degree ; and therefore it follows that the prisoner can only be sen-

tenced to suffer the penalties of murder in the second degree.

But, we are told that the Code leaves that question to the determination of the jury. Section 2571, "Upon the trial of an indictment for murder, the jury, if they find the defendant guilty, must inquire, and by their verdict ascertain whether he be guilty of murder in the first or in the second degree." True, that question is left to the jury ; still, the jury cannot go beyond the indictment. They cannot find a person guilty of an offense greater than that with which he is charged by the grand jury. That section is only appropriate to an indictment good under the Code for murder in the first degree. If good in the first degree, it necessarily includes the second, as the less offense. But if the indictment is only good to the extent of the less offense, it cannot include the greater. The Code provides that, "On an indictment for a public offense, admitting of different degrees, the defendant may be convicted of such offense on any degree lower than that charged in form in such indictment ;" § 2918. But clearly, a defendant cannot be found guilty of a higher degree of crime than that charged. The greater is not included in the less ; the minor cannot embrace the major. Therefore, an indictment for murder in the second degree, cannot justify conviction in the first degree.

Objections are urged to the instructions given by the court. The court charged the jury that, "The premeditation or intent to murder need not be for a week or an hour, nor even for a moment. If you believe there was a design and a determination to kill distinctly formed in the mind at any moment before, or at the time the blow was struck with the knife, it was a willful, deliberate and premeditated killing, and, therefore, murder in the first degree." This charge goes too far. Such a design to kill would show malice aforethought, for in that it is only necessary that there be a formed design to kill ; and such design may be conceived at the moment the fatal blow is given. But we

have already shown that our Code requires something more than this to establish murder in the first degree. It requires at least a little time to deliberate, to *pre*-meditate the killing. It is not consistent to say that a *previous* design to do a thing may be formed at the very time the thing is done. Still, such pre-determination may be inferred, from many circumstances, without direct proof. If the determination to kill was only aroused at the time the blow was struck; if it was only the instantaneous result of an aroused passion, it was not a "deliberate and premeditated" act. A fatal blow, struck under such momentary impulse, might be murder in the second degree, but not in the first, as already indicated in this opinion. This instruction, then, was erroneous; but only so in its application to the degree of the offense, and, therefore, will not justify a new trial. The effect of the error is removed by abating the judgment to murder in the second degree.

In this, as in too many other cases of murder, insanity was set up as a defense, and the court instructed the jury in these words: "Before you can acquit on the ground of insanity, you must be clearly satisfied that at the time the defendant committed the homicide, he was laboring under a mental delusion or monomania, such as irrisistibly and uncontrolably forced him to commit the crime." In this we can see no error. If a man has reason sufficient to discriminate between right and wrong, in reference to the act about to be committed by him, and if the will to do the right is not overcome by some real delusion, clearly apparent, in reference to the object upon which the act is committed, he should be held criminally responsible. In *The Commonwealth* v. *Rogers*, 7 Met., 500, it was held that a party indicted is not entitled to an acquittal on the ground of insanity, if, at the time of the alleged offense, he had capacity and reason sufficient to enable him to distinguish between right and wrong, and understood the nature, character and consequences of his act, and had mental power sufficient to apply that knowledge to his own case. But a

party is not responsible for an act done under an uncontrolable impulse, resulting directly from mental derangement ; or from the delusion of the party, amounting to a real and firm belief of the existence of a fact, which, if true, might show his criminal act to be justifiable.

In *Commonwealth* v. *Mosler*, 4 Barr., 264, it is decided that insanity will not constitute a proper ground of defense to a criminal accusation, unless it is shown to exist to such an extent as to blind its subject to the consequences of his acts, and deprive him of all freedom of agency ; *People* v. *Pine*, 2 Barb., 566 ; *Freeman* v. *People*, 4 Denio, 9.

From the authorities, we conclude that insanity cannot be set up as a defense to an indictment, unless it appears that the defendant's mind, at the time of committing the offense, was so deranged that he did not know the nature of the offense, or that he was so really deluded that he did not know he was doing wrong. Upon this point, then, we think the instruction given by the court is not erroneous. But upon the other points already considered, the judgment of the court below will be set aside, and a judgment be rendered in this court for murder in the second degree, and the defendant will be punished by imprisonment in the penitentiary for life.

Judgment reversed.

*Isaac Parish, C. Bates* and *D. O. Finch*, for plaintiff in error.

*D. C. Cloud*, Attorney General, for the state.