ANDREW J. LEONARD, PLAINTIFF IN ERROR,

*v.*

THE TERRITORY OF WASHINGTON,
DEFENDANT IN ERROR.

An indictment is not sufficient to sustain a sentence of murder in the first degree, which charges the *assault* and *shooting* to have been done purposely and of deliberate and premeditated malice; but does not aver the killing *itself* to have been done purposely and of deliberate and premeditated

malice, and only charges manslaughter. The conclusion of the indictment,
"And so the jurors do say the said Andrew Leonard, * * * feloniously,
"purposely, and of deliberate and premeditated malice, * * * * did kill
"and murder * * " does not supply this essential averment. The latter
statement is but an inference of the Grand Jury from their former state-
ment, which its language will not admit of.

Our statute in the construction of criminal pleadings, while doing away with
the technical requirements of the common law, was not intended to ignore
all forms of expression, and to regard things as intended to be expressed,
regardless of the adequacy of the language employed for the purpose. Our
statute on this subject is in harmony with and furtherance of all constitu-
tional provisions designed to insure a fair trial to a person charged with
crime.

It is not necessary for the record to disclose that a copy of the indictment was
served upon the prisoner.

While the Court does not regard the form of the oath administered to the
jury, as differing in substance from the form prescribed by the statute, it
holds the better practice is, to swear juries in the formula adopted by the
Legislature.

It was not error in the trial Court to refuse to admit in evidence a map offered
by the prisoner, for the purpose of illustrating the situation, because such
map was loaded with explanatory matter in the nature of hearsay evidence.

In a prosecution for homicide, resting on circumstantial evidence, in rebuttal
of the circumstances offered by the Territory to fix guilt upon the defen-
dant, it is error not to allow the prisoner to show that at the time of
decedent's death, there was a person in the neighborhood who was
hostile to, and had threatened to kill deceased.

The error of instructing a jury that proof beyond a reasonable doubt to war-
rant a conviction "does not require that the jury should be satisfied be-
yond a reasonable doubt, of *each link* in the chain of circumstances relied
on to establish defendant's guilt," is not cured by the further instruction:
"It is sufficient, if taking the testimony altogether, the jury are satisfied
beyond a reasonable doubt that the defendant is guilty."

A reasonable doubt is never an absolute, but always a relative question. A
reasonable doubt for a trial juror; is such a doubt as a man of ordinary
prudence, sensibility and decision in determining an issue of like concern
to himself as that before the jury to the defendant, would allow to have
any influence whatever upon him, or make him pause or hesitate in ar-
riving at his determination.

An instruction to the jury, that the fact that the prisoner does not disprove
circumstances proven before them will give additional weight to such
circumstances as are proved, if the jury believe the defendant has the
means of disproving them if false, is erroneous.

An instruction in this case that does not leave the jury at liberty to find that
the homicide, if committed, was justifiable or excusable, that does not
make malice essential to murder in either degree; nor inform the jury,
in order to constitute murder in either degree, the malice and not merely
the killing must be deliberate and premeditated, does not correspond with
the law.

A form of indictment for murder in the first degree given.


Wingard, Associate Justice, dissents from the reasoning and
conclusion as to the sufficiency of the indictment.

TURNER, Associate Justice, dissents from the reasoning of the Court as to the thirteenth instruction, holding that the failure of the accused to offer evidence can in no case be regarded by a jury as a circumstance tending to establish guilt.

ERROR, to Second Judicial District, holding terms at Olympia.

The prisoner, Andrew J. Leonard, was found guilty of murder in the first degree, and sentenced to death, on an indictment that charged him with purposely and of his deliberate malice assaulting and shooting Ambrose Patton, from the effects of which Patton died.   After setting forth the facts constituting the homicide, the indictment concluded : " And so the jurors aforesaid do say * * * in manner and form aforesaid, said Andrew Leonard, the said Ambrose Patton feloniously, purposely, and of his deliberate and premeditated malice, by means of said gun and the shooting aforesaid, did kill and murder. * * "

The indictment is set forth at length in the opinion of the Court, as also the several instructions to which exception is made.

The oath administered to the jury departed from that given in the Code in a capital case, in its closing sentence, to this extent ; that they should make a true deliverance of the prisoner whom they shall have in charge, " according to the law and the evidence, as given them on the trial," instead of the statutory words, " according to the evidence."   There was no record entry relative to the service of a copy of the indictment upon the prisoner.

The Court permitted a witness on behalf of the Territory, against the prisoner's objection, to state the contents of a letter signed J. Jackson, because no foundation had been laid for the proof, and because there was no evidence to connect the evidence with the prisoner.

The prosecution depended upon circumstantial evidence to establish the killing and the prisoner's guilt ; to overcome the effect of such proofs, the prisoner offered to prove by a witness that a certain person was seen near the place where the body of deceased was found, who, shortly before Patton's death, entertained feelings of hostility toward, and who had threatened the life of deceased; but the evidence was rejected.   In the course of the trial, the Court also refused to admit in evidence a

map of the place of the supposed murder, because the map was
so written over as to bear upon its face many statements of a
hearsay character.

Instructions were given the jury as to a reasonable doubt as
to the sufficiency of the evidence as to presumptions arising from
the failure of the prisoner to explain certain circumstances, all
of which will appear in the opinion of the Court.

*W. Scott Beebe*, for Plaintiff in error.

The record fails to show that the defendant was served with
a copy of the indictment twenty-four hours before trial, or at all.

This is a positive requirement of statute, yet is merely direc-
tory ; and although a substantial right, it is of such a character
that a compliance with this section need not appear from the
record.    (1st W. T. Rep. 435.)

The defendant was prematurely put upon trial, to wit, on the
20th day of April, 1884.

The jury must be sworn according to the statute, and in no
other way.    An oath other than that prescribed is no oath.    (3
Minn. 444 ; 1 Bishop Procedure, 883, 984 ; 1 Texas App. 408;
1 Tex. App. 510 ; 1 Tex. App. 517 ; 1 Tex. App. 519 ; 15 Tex.
App. 182 ; 41 Tex. 189.)

Defendant's counsel insisted and now urge, that the map
should have been admitted ; for, " A plan or picture, whether
made by hand of man or by photography, is admissible in evi-
dence, if verified by proof that it is a true representation of the
subject, to assist the jury in understanding the case.    (*Marcus
v. Barnes*, 16 Gray, 161 ; *Hollenbeck v. Rowley*, 8 Allen, 473 ;
*Cuzzens v. Higgins*, 1 Abbott, N. Y. 451 ; *Ruloff v. The Peo-
ple*, 45 N. Y. 213 ; *Underzook v. Commonwealth*, 76 Pa. St. 340 ;
*Church v. Milwaukee*, 31 Wis. 512.)

The Court erred in excluding the testimony of the witness
James Galloway, that a party other than the defendant had a
motive to kill deceased; was in the vicinity of the homicide that
day, and resided in the vicinity of the homicide, and entertained
hostile feelings toward deceased ; and prior to the homicide had
threatened to kill deceased.    (10 Tex. App. 246 ; 30 La. Ann.,
Pt. 2, 921 ; 31 La Ann., Pt. 2, 368 ; 32 Gratton, 912 ; 70 Mo. 594 ;
71 Mo. 312 ; 36 Am. Rep. 293; 10 Tex. App. 166 ; 36 Tex.
98.)

The rule requiring the jury to be satisfied of the defendant's guilt beyond a reasonable doubt, in order to warrant a conviction, does not require that the jury should be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt. It is sufficient if, taking the testimony all together, the jury are satisfied beyond a reasonable doubt that the defendant is guilty. (2 Blatchford, 207; 1 Tex. App. 652; 1 Tex. App. 368; 32 Ala. 569; 5 Cush. 295; 39 Cal. 326; 50 Ind. 190; 49 Ind. 111.)

Also in instructing the jury as follows:

"The Court instructs the jury that circumstantial evidence is legal and competent in criminal cases; and if it is of such a character as to exclude every reasonable hypothesis, other than the defendant is guilty, it is entitled to the same weight as direct testimony." (1 Kansas, 42; 13 Neb. 236; 76 Ill. 149; 69 Mo. 317; 57 Miss. 684; 12 Ind. 670; 29 Ind. 394; 55 Cal. 230; 32 Cal. 313; 3 Park. Cr. Reports, 401; 5 Cush. 295.)

And in giving this instruction, the jury are instructed that the reasonable doubt which entitles an accused te acquittal is a doubt of guilt arising from all the evidence in the case. The proof is deemed to be beyond a reasonable doubt, when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act without hesitation in their most important affairs. By a reasonable doubt is meant an actual, substantial doubt; not a doubt from mere caprice or groundless conjecture. (W. C. Rep., Jan. 1884, 825; 51 Cal. 372; 10 Minn. 407; 2 Metcalf, Ky. 30, 33; 18 Minn. 309; 11 Nev. 343; 1 Texas App. 368.)

The Court erred in giving this instruction:

"That while it is necessary for the prosecution to prove every material allegation in the indictment beyond a reasonable doubt, yet if the proof is of the nature that it would control and decide the conduct of reasonable and cautious men in the highest and most important affairs of life, then, as a matter of law, facts established by such evidence are deemed to be established beyond a reasonable doubt; and the jury, with that kind and degree of proof before them as to every material allegation, should convict." (76 Ill. 149; 17 Cal. 283; 43 Cal. 552; 45 Cal. 289; 60 Cal. 85; 5 Cr. C. C. 562; 5 Cr. C. C. 647.)

Also in giving this instruction :

" The Court further instructs the jury, that the fact that de-fendant does not disprove circumstances proved before them will give additional weight to such circumstances as are proved, if the jury believe the defendant · has means of disproving them, if they be false." (1 Bishop Cr. R. 1091 ; 12 Northwestern Rep. 281 ; 5 Cushing, 295 ; 55 Iowa, 517 ; 1 Bishop Cr. R. 1049 ; 1 Bishop Cr. R. 1050 ; 1 Bishop Cr. R. 1051 ; 1st W. T. Rep. 366 ; 17 Cal. 142 ; 20 Cal. 151 ; 11 Pet. 41 ; 12 Pet. 1 ; 19 How. 263 ; 20 How. 170.)

In order to constitute murder in the first degree, it is essen-tial that the *killing* shall be committed *purposely* and of *delib-erate* and *premeditated malice ;* but this indictment, in charging the crime, contains no averment that the defendant *purposely* and of *deliberate and premeditated malice killed the deceased ;* but it is charged that the *assault* was made purposely, and of deliberate and premeditated malice, and the *battery* is alleged to have been committed in the same ·manner. All the acts· alleged in the indictment may have been committed by defen-dant, and yet the crime would be of no higher grade than man-slaughter. (Code, Sec. 1006, 193 ; 27 Iowa, 407 ; 20 Mis-souri, 61 ; 7 Blachford, 20 ; 45 California, 281 ; 29 Georgia, 209 ; 108 Mass., 261 ; 33 Maine, 55.)

The Code of Iowa divides murder into two degrees, and the section defining murder in the first degree reads :

" All murder which is perpetrated by means of poison or lying in wait, or any other kind of willful, deliberate and pre-meditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, robbery, mayhem or burglary, is murder in the first degree, and shall be punished by death." (Iowa Code, Sec. 4192.)

Under this statute the Supreme Court of Iowa, in an elabo-rate opinion of remarkable clearness and ability, says : " An indictment for murder in the first degree, when the killing was not done in the perpetration or attempt to perpetrate any of the felonies mentioned in Section 4192, must charge that the *killing* was willful, deliberate and premeditated ; and an indict-ment which charged that the *assault* was willful, deliberate and premeditated, and that the *blow causing death* was dealt will-

fully, deliberately and premeditatedly, but which did not charge that it was thus dealt for the purpose or with the intent to kill, or that the *killing* was willful, deliberate and premeditated, is *bad* as an indictment for murder in the first degree. The *intent to kill* must be alleged, or words used from which the law infers this intent." (27 Iowa, 402; 4 Green, Iowa, 500.)

By a statutory provision of Ohio, murder is defined, and divided into murder in the first degree and murder in the second degree ; and the murder in the first degree is defined :

"That if any person shall purposely, or of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another, every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death."

In several well considered cases, the Supreme Court of Ohio has construed this section, and reached the conclusion that an indictment for murder in the first degree must contain " a direct averment of a *purpose or intent to kill* in the description of the crime charged." (8 Ohio State, 109 ; 8 Ohio State, 307 ; 10 Ohio State, 459.)

In support of this proposition, the following decisions are cited under statutes similar to our own. (24 Penn. State, 286 ; 83 Penn. State, 131 ; 5 Missouri, 379 ; 20 Missouri, 58 ; 25 Missouri, 326 ; 8 Yerger, 534 ; 50 New Hampshire, 369 ; 49 Indiana, 106 ; 54 Indiana, 135 ; Bishop on St. Cr. 471, 472, 473 ; 39 California, 694 ; 10 Texas App. 390 ; 13 Texas App. 520 ; 83 Texas, 228 ; 8 Ohio State, 109 ; 27 Iowa.)

In construing the indictment, and in the test of its sufficiency, the statutory requirements and not the rules of the common law govern. (4 Ind. 599 ; 8 Ind. 498 ; 37 Cal. 277 ; 39 Cal. 52 ; Code, Sec. 1002.)

*N. S. Porter*, for Defendant in error.

The objection should have been taken by demurrer, and not by motion in arrest of judgment. (1 Bishop's Crim. Procedure, 3d ed., Secs. 443, 707 a ; *State* v. *Harrington*, 9 Nevada, 91 ; *Commonwealth* v. *Newcomer*, 13 Wright, Penn. 478 ; *People* v. *Tim Ti*, 32 California, 60 ; *People* v. *Shotwell*, 27 California,

401; *People* v. *Garnett*, 29 California, 626; *People* v. *Swenson*, 49 California, 388.)

The indictment not only charges the assault to have been made, but the murder to have been committed feloniously, purposely, and of premeditated malice. (*Anthony* v. *State*, 33 American Decisions, 144; McWirt's Case, 46 American Decisions, 206; *Commonwealth* v. *Webster*, 52 American Decisions, 733; *State* v. *Pike*, 6 American Reports, 533; *State* v. *Steeley*, 27 American Reports, 271; *State* v. *Raymond*, 11 Nevada, 98; *State* v. *Larkin*, 11 Nevada, 314; *State* v. *Crozier*, 12 Nevada, 300; *People* v. *Weaver*, 47 California, 106; *People* v. *Alviso*, 55 California, 230; *People* v. *Schmidt*, 63 California, 28; *People* v. *Soto*, 63 California, 165.)

We submit, the prisoner was not prematurely put upon trial. (Dissenting Opinion by Wychef, in *Shopvonmash* v. *U. S.*, 1 Wash. Rep. 191; *Leschi* v. *Territory*, Id. 30; *State* v. *Croton*, 6 Iredell, 164; *West* v. *State*, 2 New Jersey, 212.)

The failure of the record to show that a copy of the indictment was served on the defendant is not error. (*August Lytle* v. *Wash. Ter.*, 1 Wash. Ter. Reports, 441.)

The oath administered by the Clerk to the trial jurors was a lawful one. The words "law" and "given to you on the trial," in addition to the words of the statute, do not vitiate the oath, being explanatory. (Code of W. T., Sec. 1038; 1 Bishop on Criminal Procedure, 3d ed., Sec. 987; Proffat on Jury Trial, Secs. 200 and 325.)

An entry in a criminal case, that the jury were sworn "to well and truly try, and true deliverance make," cannot be regarded as an attempt to spread the form of oath upon the record; and as it states the jury were sworn, the Court will presume the proper oath was administered. (Proffat on Jury Trial, Sec. 202; *Russell* v. *State*, 10 Tex. 288; *Bawcom* v. *State*, 41 Tex. 191; *Edwards* v. *State*, 49 Ala. Reports, 334; *McCuller* v. *State*, 49 Ala. Reports, 39; 1 Bishop's Criminal Procedure, 3d ed., Sec. 1357.)

The objection to the oath should have been made in the Court below; it cannot be made in the appellate Court for the first time. (Proffat on Jury Trial, Sec. 203; *Looper* v. *Bell*, 1 Head, 373; *Chandler* v. *Hammond*, 23 Ga. Rep. 493; *Wrocklege* v. *State*, 1 Clarke, Iowa, 167.)

It is not error to exclude testimony that others had threatened to kill deceased. (*Booth* v. *State*, 4 Tex. Appeals, 202; *Walker* v. *State*, 6 Tex. Appeals, 576.)

The instructions given were proper. (Sackett's Instructions to Juries, 472 to 477; *Burrell* v. *State*, 18 Tex. 714; *People* v. *Levison*, 16 Cal. 99; *People* v. *Williams*, 17 Cal. 143; *People* v. *Gibson*, 17 Cal. 283; *People* v. *Ah Fung*, 17 Cal. 377; *People* v. *Byrnes*, 30 Cal. 206.)

It was only necessary that the jury be satisfied from the evidence beyond a reasonable doubt, that the deceased came to his death by the wounds inflicted by leaden bullets, by the defendant. (Proffat on Jury Trial, Secs. 423-4; Wharton on Homicide, 262; *Commonwealth* v. *Webster*, 52 Am. Dec. 733; *People* v. *Martin*, 47 Cal. Rep. 101.)

Opinion by GREENE, Chief Justice.

The plaintiff in error prosecutes this suit to reverse a judgment of death against him, and to procure a new trial. He was indicted in November, 1882, as is supposed, for murder in the first degree, and was convicted and sentenced in May, 1884.

Errors in great number and variety are assumed to have occurred in the lower Court, some before, some during, and some subsequent to the trial, any of which, it is claimed, would be sufficient to vitiate the judgment; and all of which, except what otherwise appear of record, are duly saved in a bill of exceptions. We will pass upon the most important of these supposed errors in their order.

A fatal defect, first of all, is alleged to exist in the indictment itself. Guilt of murder in the first or second degree cannot, it is contended, be gathered from the facts set forth as constituting the crime.

"Every person, says our statute, who shall purposely and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate, any rape, arson, robbery or burglary, or by administering poison or causing the same to be administered, kill another; every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death"; and "Every person who shall purposely and maliciously, but without deliberation and premeditation, kill another;

every such person shall be deemed guilty of murder in the second degree." (Code, Secs. 786, 790.)

Such is the statute of murder under which the plaintiff in error was put to his trial, upon an indictment, the body whereof reads as follows : " Andrew Leonard is accused by the Grand Jury of the Territory of Washington, composed of good and lawful men from the body of the Second Judicial District, and from the counties of Cowlitz and Wahkiakum, duly elected, empanneled, sworn and charged to enquire of and true presentment make to the said District Court, at the regular November term, A. D. 1882, of the said District Court, begun and held at Kalama, in the County of Cowlitz, in the district aforesaid, on the 4th Monday, being the 27th day of November, A. D. 1882, of all offenses committed in the said district against the laws of the Territory of Washington, by this indictment of the crime of murder in the first degree, committed as follows, to wit: The said Andrew Leonard, on the 5th day of November, A. D. 1882, and within one year next preceding the date hereof, in the County of Cowlitz aforesaid, in the said district, in said Territory of Washington, in and upon one Ambrose Patton, feloniously, purposely, and of deliberate and premeditated malice, did make an assault; and that the said Andrew Leonard, with a certain gun, then and there loaded and charged with gunpowder and leaden bullets, then and there feloniously, purposely, and of deliberate and premeditated malice, did discharge and shoot off to, against, and upon the said Ambrose Patton ; and that the said Andrew Leonard, with the leaden bullets aforesaid, out of the gun aforesaid, then and there by force of the gunpowder aforesaid, by the said Andrew Leonard discharged and shot off as aforesaid, *the said Ambrose Patton,* in and upon the left side of him, the said Ambrose Patton, then and there feloniously, purposely and of deliberate and premeditated malice, did strike, penetrate, and wound, giving to the said Ambrose Patton, then and there, with the leaden bullets aforesaid, so as aforesaid shot and discharged and sent forth out of the gun aforesaid, by the said Andrew Leonard, in and upon the left side and head of him, the said Ambrose Patton, eleven mortal wounds, of which said mortal wounds the said Ambrose Patton then and there instantly died.

"And so the jurors aforesaid do say that the said Andrew Leonard, the said Ambrose Patton in manner and form aforesaid, then and there feloniously, purposely, and of deliberate and premeditated malice, by means of said gun and the shooting aforesaid, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of Washington.   Dated at Kalama, in the district aforesaid, this 29th day of November, A. D. 1882."

Our statute requires, that to constitute such a murder in the first degree as would consist with the facts charged in this indictment, the killing must have been done purposely, and of deliberate and premeditated malice.   Five or six States have statutes similar to, and three or four others statutes almost or quite identical with, our own.   So far as we are advised, the Supreme Courts of all those States concur in holding, that to bring a case within the statute, the indictment must charge that the killing itself was purposed, deliberate, premeditated and malicious.   (Or. Cr. Code, Sec. 506 ; 7 Or. 198 ; 8 Ohio St. 109, 307 ; 10 Ohio St. 459 ; 54 Ind. 135 ; 59 Ind. 105 ; Iowa Code, Sec. 4192 ; 4 Greene, 500 ; 27 Iowa, 402 ; 24 Penn. St. 286 ; 83 Penn. St. 131 ; 5 Mo. 379 ; 20 Mo. 58 ; 25 Mo. 326 ; 66 Mo. 24 ; 8 Yerger, 534 ; 49 N. H. 369.)

It is clear that the indictment ought to charge the crime conformably to the definition of the statute.   Nowhere does the one before us so charge murder in either degree, unless its closing paragraph, beginning " And so," can be taken to eke out what is alleged in the preceding sentence.   In the former part or body of the indictment, both purpose and malice are ascribed to the assault and to the shooting and wounding, but neither of them to the killing or giving of the mortal wounds.   Since this is so, we conclude that if purpose or malice in the very killing itself is anywhere averred, it must be in the closing paragraph.

Does that paragraph aver either?   Evidently it does, if the positive allegation contained therein, " that the said Andrew Leonard, the said Ambrose Patton, in manner and form aforesaid, then and there feloniously, purposely, and of deliberate and premeditated malice, by means of said gun and the shooting aforesaid, did kill and murder," introduced as the allegation

is by the words " and so," can be held to be such an averment ;
and otherwise it manifestly does not.

. A meaning other than that which the Grand Jury may
fairly said to have intended it should bear, cannot be given it.
The incriminating facts, upon which they intended the defend-
ant should be tried, they have undertaken to express in words.
How they say what they do say, is the least and only possible
evidence of what they intended to say. By the words they
have used, and the structure they have given to the sentences
into which they have framed their words, we shall ascertain the
meaning they have intended. Under our laws an indictment
must be direct and certain, both as regards the crime charged
and as regards the particular circumstances thereof, when they
are necessary to constitute a complete crime. The circumstanc-
es of purpose and malice, as ingredients of the killing, are nec-
essary to constitute the complete crime of murder, in either de-
gree, by our law. Therefore if the words " and so," preceding
the averment of purposeful and malicious killing, indicate an
intent on the part of the Grand Jury to announce a mere infer-
ence that they draw from facts they have previously set forth,
then the charge that the defendant " purposely and of deliberate
and premeditated malice " killed, positive though it be, should
not have the force of a direct and certain averment.

How can it be sensibly claimed that an inferential statement
should have the force of an absolute ? Everybody recognizes
and allows for the difference. Give to the one statement the
same effect as to the other, and you break down and do away
with those necessary partitions, those ancient landmarks, be-
tween meaning and meaning, which must reverently be pre-
served and heeded, if communication between mind and mind
is to be either possible or safe. It is true that our statute pre-
scribing criminal procedure quite abolishes the embarrassing
and injurious technicalities of the common law ; but it also de-
clares, in the interest both of the public and of the party ac-
cused, that the act or omission charged as crime shall be " clearly
and distinctly set forth, in ordinary and concise language, with-
out repetition, and in such a manner as to enable a person of
common understanding to know what is intended." From the
statutory provisions, we gather that our Courts, and defendants

in the Courts, are to view indictments through the simple at-
mosphere of common sense, and not through the line-multiply-
ing spectroscope of the common law ; but we do not understand
that, in construing indictments, forms of expression are to be
utterly disregarded, and that things are to be understood as
intended to be expressed, for which there appears no adequate
or sensible form of expression. That a defendant must be tried
for something definitely charged, or he has no fair trial, is very
clear. Our statute designs and insures a fair trial, and is in
perfect harmony and furtherance of all constitutional provisions
in that regard.

From an application of these considerations to the form of
expression adopted by the Grand Jury as the closing paragraph
of their indictment in this case, it follows that if the language
of the paragraph is such as would naturally be understood to
state an inference, then neither the defendant nor the Court,
nor any person of common understanding, could have learned
from the indictment that the Grand Jury found anything more
than the fact of manslaughter and a conclusion of murder ;
for, assuming the paragraph to be purely inferential, they say
in effect : " We find it to be true as matter of fact, that the de-
fendant committed manslaughter, and we find it to be sound as
a conclusion therefrom, that he committed murder in the first
degree." Grant such to be the meaning of this indictment;
then the utmost issues upon which the defendant could be
tried, or his cause heard under it, would be : 1st, Is it true, as
matter of fact, that he committed manslaughter ? and 2d, Is
it sound, as a conclusion therefrom, that he committed murder ?
Of course, the former is an issue of fact, the latter one of law;
and if these issues comprise all that arise under the indictment
before us, the defendant could not be put upon his trial before
a jury for any higher grade of offense than manslaughter.

Dictionaries furnish us with no definition of the word " so "
that will fit the connection of this paragraph, except the word
" therefore," or other words expressive of the idea of logical
sequence. In a common law indictment for murder, a closing
paragraph like this was regularly added after the charging part
of the bill, as " a conclusion of law." (1 Chitty Cr. Law, 231 ;
3 Id. 737 ; *Rex* v. *Nicholas et al.*, 32 Eng. C. L. 620 ; 1 Russ.
Cr. 563.)

Such a legal conclusion, the Grand Jury who produced this indictment certainly could have expressed, if they had so desired; and if, having so expressed themselves, we refuse to recognize their intention, we virtually take from them the power of expression. Easily, they could have passed into the well-worn track of centuries of Grand Juries who had gone before them. Then, if they appear to have done this, why should we not understand that they have done it ? Every " person of common understanding " must, upon reflection, it seems to us, perceive that they have.

Reaching this conclusion, we find ourselves well supported by authority. No abler Judges have graced the Supreme Bench of Iowa than Judges Greene and Dillon. A decision is reported of each of them on the precise point of the insufficiency of an indictment like this to sustain a conviction of murder. (*Fouts* v. *State*, 4 Greene, 500 ; *State* v. *McCormick*, 27 Iowa, 402.) Likewise, has decided the Supreme Court of Ohio, in two well-considered opinions. (*Fouts* v. *State*, 8 Ohio St., 109 ; *Kain* v. *State*, Ib. 306.)

Leaving now the indictment, we pass to another supposed error. It appears, that the record fails to show that the defendant was served with a copy of the indictment twenty-four hours before trial. For such service, provision is made by statute; but we do not think that the record need show the service. (*Lytle* v. *Terry*, 1 Wash. 435.)

Exception could have been taken by defendant to the action of the Court below, if it forced him to trial contrary to the statute.

There is no claim that he did not seasonably get his copy of the indictment, but only that the record does not show he did.

Hardship, if there were any, could have been relieved upon exception.

Referring to the next supposed error, we find it relates to the oath administered to the trial jury. Objection is made that the oath administered was fatally variant from that prescribed by statute.

Under the statute, a jury in a capital case must be sworn to " well and truly try, and true deliverance make between the Territory and the prisoner at the bar whom they shall have in charge, according to the evidence." (Code '81, Sec. 1084.)

Going into this case the jury were sworn to " well and truly try, and true deliverance make between the Territory and the prisoner at the bar whom they shall have in charge, according to the law and the evidence as given them on the trial." How this oath can be held bad, we do not see, unless the words " as given them on the trial," are to be regarded as qualifying the word " evidence " only. Judged by the ordinary rules of speech, it should be understood to qualify the whole phrase " the law and the evidence." Evidently, it would be error to give the jury to understand, under the solemn form of an oath, that on them rested the responsibility of having the defendant tried according to law. Such, however, was not the sense of the oath they took. Under it, they were bound to no other obligation than would have been theirs under the simpler statutory formula. Substantially, their oath corresponded to that which this Court upheld in the case of *Hartigan* v. *Territory* (1 Wash. 447), and which followed the statute, save that it added the supplementary words, " and the law as given by the Court." Cases cited by counsel none of them conflict with that decision.

Holding as we do respecting the indictment, the divergence of the oath under consideration from that prescribed for capital cases becomes immaterial, except as the latter, because prescribed for such cases, naturally and practically becomes the oath under which are tried all sorts of cases of included crimes.

Regarding this indictment, however, as one for manslaughter simply, for the trial of which crime, when not included in a charge of murder in the first degree, the statute prescribes that the jury shall be sworn to " well and truly try the issue between the Territory and the defendant, according to the evidence " (Code, Sec. 1084), we think the oath actually administered nevertheless good. It contains nothing but what the Legislature have approved as a fitting oath for the trial of manslaughter, when included in the capital charge, together with the addition already discussed. Still, we think correct practice requires close adherence to the statutory formulas in the administration of trial oaths, and we would not be understood to countenance any looseness in that respect. The Legislature presumably had some sound reason in prescribing one form of oath for capital, and another for all other cases.

On the trial, a witness, George Roberts, was permitted to state the contents of a letter, signed " J. Jackson," and the permission has been assigned as error. Under the circumstances, we are of opinion that it was error. Really, so far as the transcript shows, no sufficient foundation had been laid for proof by parole. Letting that be as it may, there was, apart from the contents of the letter, no evidence to connect it with the defendant, and there was nothing in the contents themselves, in the light of the other evidence, that would point to defendant as the writer.

Offer was made by defendant, in course of the trial, to introduce in evidence a map marked " Exhibit A," and intended to exhibit and illustrate the vicinity of the supposed homicide.

Refusal by the Court to admit the map is one of the errors assigned.

Discretion was vested in the Court, we think, to admit or reject a map under the circumstances in evidence. But this particular map was loaded with explanatory matter in the nature of hearsay, and should properly have been excluded under any circumstances.

We find no error in the refusal complained of.

In excluding certain proffered testimony of James Galloway, a witness for defense, it is claimed there was error. By him defendant proposed to prove that a person other than himself resided in the neighborhood of the supposed homicide,—was there on the day of it,—entertained hostile feelings towards the deceased, and had threatened to kill him. In view of the evidence for the prosecution, we think this testimony should have been admitted. One main question on the trial was, Who killed the deceased? Addressed to this, the evidence for the prosecution was wholly circumstantial; and some of it, tending to identify the defendant as the slayer, was of a like description to that proposed to be obtained from this witness. Defendant, therefore, had a right to meet and neutralize or overcome the evidence of the prosecution, tending to identify himself as the guilty party, by evidence of the same nature tending to identify some other person as the perpetrator of the crime. (10 Tex. App. 246 ; 30 La. Ann., Pt. 2, 921; 31 Ibid, 368 ; 32 Gratton, 912; 70 Mo. 594 ; 71 Ib. 312; 36 Am. Rep. 293.)

Among the instructions given for the prosecution was this:

"The rule requiring the jury to be satisfied of the defendant's guilt beyond a reasonable doubt, in order to warrant a conviction, does not require that the jury should be satisfied beyond a reasonable doubt of *each link* in the chain of circumstances *relied upon* to establish the defendant's guilt., It is sufficient if, taking the testimony altogether, the jury are satisfied beyond a reasonable doubt that the defendant is guilty."

The giving of this instruction, we think, is well assigned as error.

The metaphor of the " chain," taken in connection with the remainder of the instruction and the evidence, seems to us inaccurate and misleading. Probably, what the Judge meant to say was, that the jury did not need to be satisfied, beyond reasonable doubt, of every inculpatory fact. Ordinarily, in a case resting in circumstances, a linked arrangement of fact to fact is observable in a part or parts of the evidence. But a guilty person is more commonly hemmed in by a throng of circumstances, than enclosed by facts arranged chain-wise.

Release from a chain comes when the weakest link gives way; but escape from a crowd does not necessarily depend on the presence or absence of one or another, or even, perhaps, the greatest number, of the individuals composing it. In this case the inculpatory facts were grouped about the prisoner, and only a part of them were linked together, or strictly interdependent. The fault in the instruction lies in its tendency to lead the jury to regard all the facts as disposed in a chain, every link in which, if such were the case, would need to be proved beyond a reasonable doubt.

Two other instructions for the prosecution, the giving of each of which is assigned as error, are as follows:

1. " The jury are instructed that the reasonable doubt which entitles an accused to acquittal is a doubt of guilt arising from all the evidence in the case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act without hesitation in their most important affairs. By a reasonable doubt is meant an actual, substantial doubt ; not a doubt from mere caprice or groundless conjecture."

2. " That while it is necessary for the prosecution to prove every material allegation in the indictment beyond a reasonable doubt, yet if the proof is of the nature that it would control and decide the conduct of reasonable and cautious men in the highest and most important affairs of life, then, as a matter of law, facts established by such evidence are deemed to be established beyond a reasonable doubt, and the jury with that kind and degree of proof before them as to every material allegation, should convict."

. Both of these instructions seem to us erroneous. The former is good, if tested by the definition of reasonable doubt given by most of the law-writers and Courts. Still, it seems to us open to criticism. The latter does not discriminate between considerations which would ultimately decide and control the conduct of reasonable and cautious men, and suggestions which would receive a certain amount of attention and deliberation, though eventually to be rejected. Pertinently to both instructions, we would remark, that the most important affairs of ordinarily prudent men, or affairs that are deemed such, are often mere matters of business or pleasure, or some small risk to life or limb. Whether a doubt is reasonable or not is never an absolute, but always a relative, question. It can only be answered by reference to the circumstances and the issues to which it is related. What would not be a reasonable doubt in a matter of slight consequence and in one situation, would be a reasonable one in another posture of affairs and in a matter more momentous. A sensible and humane man will proceed more cautiously when life or death turns on which step he takes, than if the result involved is the payment of some small fine. " Skin for skin ; all that a man hath will he give for his life."

A doubt is reasonable, if in view of all the surroundings and the issue to be decided, it would not be unreasonable to entertain it : which is much the same as to say, that a reasonable doubt is one that is reasonable.

A reasonable doubt for a trial juror is such a doubt as a man of ordinary prudence, sensibility and decision, in determining an issue of like concern to himself, as that before the jury to the defendant, would allow to have any influence whatever upon him, or make him pause or hesitate in arriving at his determination.

In the last instruction for the prosecution, the Court tells the jury "that the fact that defendant does not disprove circumstances proved before them will give additional weight to such circumstances as are proved, if the jury believe the defendant has the means of disproving them if they be false."

This also is objected to as erroneous, and we deem the objection sound. It is assumed by this language that circumstances have been proved, whereas it is for the jury to say whether any have been proved or not. Moreover, by it the jury are charged that the defendant's failure to disprove will give additional weight to circumstances proved; whereas in truth the failure does not necessarily add weight to anything, but only brings into the case an additional circumstance of greater or less significance, namely—the failure itself; which circumstance is to be received by the jury for whatever on the whole it is worth, and may or may not combine with the other circumstances in the case, adding its weight to theirs, so that they with it will weigh more than they would alone.

As to any failure on the part of defendant himself to testify, we doubt whether the instruction is sufficiently qualified to the apprehension of the jury by another correct instruction, afterwards given, to the effect that the jury should draw no inference of guilt against the defendant from his failure to testify in his own behalf.

The Code provides " that it should be the duty of the Court to instruct the jury that no inference of guilt *shall arise* against the accused, if the accused shall *fail* or *refuse* to testify as a witness in his or her own behalf." (Code of 1881, Sec. 1067.)

We think that the spirit of this provision demands that the failure of the defendant to testify as to any point shall not opperate to his disadvantage in any branch or aspect of the case.

The next and last supposed error that deserves particular notice is the giving of the following instruction : " If you find the facts necessary to establish the guilt of defendant, proven to the certainty above stated, then you may find him guilty of such a degree of crime as the facts so found show him to have committed ; but if you do not find such facts so proven, then you must acquit. The facts which you must find to be established to the degree above stated, are : That Ambrose Patton, named in the indictment, is dead ; that he came to his death by reason of a

gunshot wound or wounds, and that said wound or wounds were purposely inflicted by the defendant.

"These facts being so proven, the defendant should be convicted of manslaughter; and if you find in addition to these facts, the further fact that the said wound or wounds were so inflicted with an intent to kill the deceased, then you may convict defendant of murder in the second degree; and if you further find the additional fact that such intention to kill was deliberated upon and premeditated by the defendant, then you may find him guilty of murder in the first degree, as charged in the indictment. In determining the question of intention, you have a right to assume that the defendant intended the usual and probable effect of the acts which you find that he has committed."

It is very observable that this instruction does not leave the jury at liberty to find that the homicide, if committed, was justifiable or excusable; nor does it make malice necessary to murder in either degree; nor does it inform the jury that, in order to constitute murder in the first degree, the malice, and not merely the killing, must be deliberate and premeditated; nor does it take account of the infirmity of the indictment, which falls short of charging more than manslaughter. In these respects the instruction did not correspond with the law.

Many other supposed errors are assigned, but all of them that we consider well assigned and of importance can be disposed of by application of the same principles already enunciated. Nothing, therefore, remains for us to say, bearing upon the decision of this cause. But in view of the verbiage characterizing the form of indictment before us, we think it not out of place for us, in closing this opinion, to recommend as more comfortable to our statute a form suitable, *mutatis mutandis*, for use by the Grand Juries and prosecuting officers of this Territory, as follows:

"*District Court for the Second Judicial District of Washington Territory, holding terms at Kalama.*"

The Territory of Washington, ⎫
          v.          ⎬
Andrew J. Leonard.   ⎭

"Andrew J. Leonard is accused by the Grand Jury of the Territory of Washington, for the counties of Cowlitz and Wah-

kiakum, by this indictment, of the crime of murder in the first degree, committed as follows : He, said Andrew J. Leonard, in said county of Cowlitz, on the 5th day of November, 1882, purposely, and of his deliberate and premeditated malice, killed Ambrose Patton, by then and there purposely, and of his deliberate and premeditated malice, shooting and mortally wounding the said Ambrose Patton, with a gun which he, the said Andrew J. Leonard, then and there held in his hands.

"Dated at Kalama, in the District aforesaid, the 29th day of November, 1882.

"N. H. BLOOMFIELD,
Prosecuting Attorney."

The judgment of the District Court will be reversed, and a new trial granted.

I concur in all the foregoing opinion except the reasoning and conclusion in regard to the sufficiency of the indictment. (See dissenting opinion of Justices Swan and Brinkerhoff in *Fouts* v. *The State*, 8 Ohio State, 109.

S. C. WINGARD,
Associate Justice.

In concurring in this opinion, I desire to dissent from the reasoning of the Court as to the thirteenth instruction. I agree that that instruction is error, but I think it is error because it directs the jury to consider the failure of the accused to offer evidence in his defense, for the purpose of assisting them to remove a reasonable doubt of his guilt, when, under the law, he is in no case required to offer evidence until his guilt is established beyond a reasonable doubt.

In other words, I do not think the failure of an accused person to offer evidence can, in any case, be considered by the jury as a circumstance to determine, or to assist in determining, his guilt.

II. WASH.—26.                          GEORGE TURNER,
Associate Justice.