58 P.3d 245 (2002)
147 Wash.2d 353
STATE of Washington, Respondent,
v.
Aaron BORRERO, Petitioner.
No. 70746-4.
Supreme Court of Washington, En Banc.
Argued October 18, 2001.
Decided September 19, 2002.
David B. Koch, Nielsen Broman & Koch Pllc, Seattle, for Petitioner.
*246 Lee D. Yates, Senior Deputy Prosecuting Attorney, Prosecuting Atty Offc, King County Prosecutor/Appellate Unit, for Respondent.
IRELAND, J.
Defendant Aaron Borrero sought review of a Court of Appeals' decision affirming his conviction for first degree kidnapping and attempted first degree murder. At issue is whether the information charging Borrero was constitutionally deficient because it used the term "attempt" rather than "substantial step" to describe Borrero's alleged criminal conduct. We hold that because the plain meaning of "attempt" conveys the substantial step element, Borrero was given the required notice of the crime charged. Also at issue is whether an erroneous accomplice liability jury instruction denied Borrero his due process rights. We hold that because the error in the jury instruction did not relieve the State of its burden to prove every element necessary to constitute the charged crimes, the error was harmless. We affirm the judgment and sentence.

FACTS AND PROCEDURAL HISTORY
Aaron Borrero and Kyle Anderson were each charged with first degree kidnapping and first degree assault in an information filed in King County Superior Court on April 1, 1997. The charges arose from binding and abducting Leslie Lemieux and from throwing Lemieux into a river.
An amended information, adding Michael Vaughn as a codefendant to both charges and removing Anderson as a defendant to the assault charge, was filed on April 21, 1997.
Borrero and Vaughn were allowed to sever their trials from that of Anderson. Vaughn subsequently negotiated a plea agreement under which he would be allowed to plead guilty to a single count of first degree kidnapping in return for his testimony against Borrero and Anderson.
A second amended information was filed on October 20, 1997. The information charged both Borrero and Anderson with first degree kidnapping while armed with deadly weapons. In addition, the information amended the first degree assault count to attempted first degree murder.
Borrero's jury trial commenced before King County Superior Court Judge Michael J. Fox on February 9, 1998.
At trial, Lemieux testified that in March 1997, he took a duffel bag containing 30 pounds of marijuana to Anderson's home in order to complete a prearranged sale with Anderson. When Lemieux walked through a doorway in the house, Borrero stepped out, pointed a pistol at him, and ordered him to lie face down. Another man, who was later identified as Vaughn, held a shotgun to the back of the victim's head. Borrero bound the victim's hands and feet with speaker wire, bound his hands and feet together, and stuffed him into a duffel bag. Lemieux was then carried to the back of his Jeep. After being driven around for several hours, Lemieux testified he was taken from the vehicle while still hog-tied and thrown into the Yakima River by Borrero and Vaughn.
Lemieux managed to break the bond between his hands and feet and to reach the riverbank without being observed by his assailants. The victim then contacted a passing motorist, who summoned police. Borrero was arrested in California two months later.
In his trial testimony, Vaughn testified that he, Borrero, and Anderson planned to rob Lemieux and then drown him. Vaughn corroborated the events described by Lemieux. He stated that Anderson seized the marijuana while Lemieux was held at gunpoint.
Borrero testified that he was not present and was not involved in any way with what happened to Lemieux. When the State had rested, Borrero moved to dismiss the attempted first degree murder charge, arguing that the information failed to allege the "substantial step" element of the offense. The court denied the motion.
Borrero also objected to the accomplice liability jury instruction. The State's proposed instruction was based on the standard WPIC 10.51, but included an additional sentence derived from the comment to the pattern instruction that "an accomplice may be convicted even though the other person is not *247 prosecuted or convicted." Verbatim Report of Proceedings (Mar. 9, 1998) at 10-11. While maintaining his objection to the instruction, Borrero proposed that the language be changed to read as follows: "An accomplice may be tried for the crime even though another person is not prosecuted." Id. at 14. The court gave the instruction as proposed by Borrero.
Borrero was convicted on both counts, including a special verdict finding of a deadly weapon enhancement on the kidnapping charge. The court imposed standard range concurrent sentences of 156 months for kidnapping in the first degree (including a firearm enhancement of 60 months) and 275 months for attempted murder in the first degree.
Borrero appealed his conviction to Division One of the Court of Appeals, contending that the information was insufficient because it "did not allege all necessary statutory elements" of the crime of attempted first degree murder. Br. of Appellant at 1. In addition, Borrero assigned error to the accomplice liability jury instruction given by the trial court.
The Court of Appeals affirmed Borrero's conviction, holding that the use of the word "attempt" in the information sufficiently apprised the defendant of the "substantial step" element required for the crime of attempted murder. State v. Borrero, 97 Wash.App. 101, 106, 982 P.2d 1187 (1999).
This court first deferred Borrero's petition for review pending a decision in State v. Taylor, 140 Wash.2d 229, 996 P.2d 571 (2000). The petition was then granted, and the case was remanded to the Court of Appeals for consideration in light of State v. McCarty, 140 Wash.2d 420, 998 P.2d 296 (2000). State v. Borrero, 141 Wash.2d 1010, 10 P.3d 407 (2000). In its subsequent unpublished opinion, the Court of Appeals adhered to its original decision. State v. Borrero, No. 42865-9-I, 103 Wash.App. 1045, 2000 WL 1808190 (Dec. 11, 2000).
Borrero then filed a second petition for review, which was also granted. State v. Borrero, 143 Wash.2d 1019, 25 P.3d 1019 (2001). Borrero renewed his challenge to the sufficiency of the information. In addition, he contended that the accomplice liability instruction given at trial denied his due process rights because the jury was given the same accomplice instruction found to be erroneous in State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000) and State v. Cronin, 142 Wash.2d 568, 14 P.3d 752 (2000).[1] Borrero argued that the erroneous instruction relieved the State of its burden to prove every element necessary to constitute the charged crime.

ANALYSIS
Issues
Whether an information that charges attempted first degree murder but does not expressly allege the "substantial step" element of criminal attempt is constitutionally insufficient when the document is challenged prior to verdict.
Whether a jury instruction denies the defendant's due process rights if "a" rather than "the" modifies the word "crime" in specifying accomplice liability for a charged crime under the facts of this case.
The documents at issue are the information charging Borrero with attempted murder and the jury instruction concerning accomplice liability.
Sufficiency of Information
"[A] charging document must include all essential elements of a crime." Taylor, 140 Wash.2d at 236, 996 P.2d 571. This "essential elements rule" is grounded in the federal and state constitutional requirements that criminal defendants be informed of the accusations against them. Id.
The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall ... be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The Washington Constitution *248 contains a similar provision: "In criminal prosecutions the accused shall have the right... to demand the nature and cause of the accusation against him [and] to have a copy thereof." Const. art. I, § 22. Also, as established by court rule, the initial pleading by the State in all criminal proceedings is to be "a plain, concise and definite written statement of the essential facts constituting the offense charged." CrR 2.1(a)(1).
"[A]ll essential elements of a crime... must be included in the charging document so as to apprise the defendant of the charges against him and to allow him to prepare his defense." State v. Hopper, 118 Wash.2d 151, 155, 822 P.2d 775 (1992). "When a conviction is reversed due to an insufficient charging document, the result is a dismissal of charges without prejudice to the right of the State to recharge and retry the offense for which the defendant was convicted or for any lesser included offense." State v. Vangerpen, 125 Wash.2d 782, 791, 888 P.2d 1177 (1995).
"The standard of review for evaluating the sufficiency of a charging document is determined by the time at which the motion challenging its sufficiency is made." Taylor, 140 Wash.2d at 237, 996 P.2d 571. When a charging document is challenged for the first time after the verdict, it is to be "liberally construed in favor of validity." State v. Kjorsvik, 117 Wash.2d 93, 102, 812 P.2d 86 (1991). In contrast, however, when an information is challenged before the verdict, as it was in the instant case, "the charging language must be strictly construed." Taylor, 140 Wash.2d at 237, 996 P.2d 571.
"The two distinct standards of review encourage prosecuting attorneys to file sufficient complaints, and also encourage defendants to make timely challenges to defective charging documents to discourage `sandbagging.'" Id. at 237 n. 32, 996 P.2d 571.
State v. Johnson addressed pretrial challenges to informations alleging unlawful delivery of a controlled substance. The Johnson court stated as follows:
The charging documents in these cases are not to be examined to determine whether the missing elements appear in any form, or by fair construction can be found, and the language must not be "inartful or vague" with respect to the elements of the crime. Rather, due to the context of a pretrial challenge, we construe the charging language strictly ....
State v. Johnson, 119 Wash.2d 143, 149-50, 829 P.2d 1078 (1992) (quoting Kjorsvik, 117 Wash.2d at 106, 812 P.2d 86).
Applying its strict construction standard, the Johnson court determined that the term "unlawfully" in the information was not sufficient to allege the essential guilty knowledge element of the crime charged.[2]Id. at 150, 829 P.2d 1078.
In State v. Vangerpen, a strict construction case where the charging document was challenged just after the State rested its case, the court held that the remedy for an information's failure to include the essential element of premeditation was reversal of the defendant's attempted first degree murder conviction. Vangerpen, 125 Wash.2d at 795, 888 P.2d 1177. The Vangerpen court stated that "[m]erely citing to the proper statute and naming the offense is insufficient to charge a crime unless the name of the offense apprises the defendant of all of the essential elements of the crime." Id. at 787, 888 P.2d 1177.
In a subsequent case, State v. Chaten, where the defendant challenged the information immediately upon the State resting, the Court of Appeals applied the strict standard of review to the defendant's claim that the information which charged him with second degree assault did not explicitly state the essential element of intent. State v. Chaten, 84 Wash.App. 85, 87, 925 P.2d 631 (1996). The Chaten court held that the information was nonetheless sufficient "because an assault is commonly understood to be an intentional act." Id. at 86, 925 P.2d 631.
Likewise, the Taylor court recently stated that "[t]he charging document need not state *249 the statutory elements of the offense in the precise language employed in the statute, but may `use words conveying the same meaning and import as the statutory language.'" Taylor, 140 Wash.2d at 235-36, 996 P.2d 571 (quoting State v. Leach, 113 Wash.2d 679, 689, 782 P.2d 552 (1989)). Again construing a charging document strictly when the challenge to the complaint was made prior to voir dire, the Taylor court held that alleging the defendant's actions included "pushing, kicking and punching the victim in the face" was sufficient to implicitly constitute the intent element of assault in the fourth degree. Id. at 242, 996 P.2d 571.
In the case before us, the charging statute for first degree murder provides that a person is guilty of the crime when "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person[.]" RCW 9A.32.030(1)(a). A person with the requisite intent is guilty of criminal attempt if "he or she does any act which is a substantial step toward the commission of [the intended] crime." RCW 9A.28.020(1). "A `substantial step' is conduct strongly corroborative of the actor's criminal purpose." State v. Aumick, 126 Wash.2d 422, 427, 894 P.2d 1325 (1995).
The information in the instant case charged Borrero in the statutory language that defines first degree murder: "[The defendant] with premeditated intent to cause the death of another person did attempt to cause the death of Leslie Lemieux, a human being." Clerk's Papers (CP) at 24. Borrero contends that the information is insufficient because it failed to also state the "substantial step" toward the commission of the charged crime.
It is important to note that Borrero's challenge, made just after the State rested, is directed to the charging document rather than to the jury instructions concerning attempted murder. The trial court instructed the jury as to the elements of attempted murder in the first degree, including the following definition: "A substantial step is conduct which strongly indicates a criminal purpose and which is more than mere preparation." CP at 52. The defendant asserts that because the "substantial step" language was omitted from the information, he was not sufficiently informed of the charges against him and was not able to adequately prepare his defense.
The Court of Appeals set out the differing purposes of a jury instruction and an information as follows:
The purpose of a jury instruction is to provide the jury with the applicable law to be applied in the case. On the other hand, the purpose of an information is to give a defendant notice of the crime with which he or she is charged. Because of these different purposes, jury instructions must necessarily contain more complete and precise statements of the law than are required in an information.
Borrero, 97 Wash.App. at 107, 982 P.2d 1187.
The Court of Appeals has held that the term "attempt" encompasses the statutory definition of attempted murder, including the substantial step element, when a charging document was reviewed for validity under the liberal standard applied to a postverdict challenge. State v. Rhode, 63 Wash.App. 630, 636, 821 P.2d 492 (1991). Here, we must determine if "attempt" also adequately apprises the defendant of the substantial step toward the commission of first degree murder when the charging document is strictly construed.
As the Court of Appeals suggests, we must determine whether the word "attempt," as commonly understood, conveys the element of "substantial step." The Court of Appeals properly seeks the plain meaning of "attempt" in dictionary definitions. Borrero, 97 Wash.App. at 105-06, 982 P.2d 1187. The term is defined as "to make an effort to do, accomplish, solve, or effect." Webster's Third New International Dictionary 140 (1993). Synonyms of "attempt" include "try," "endeavor," and "strive." Merriam Webster's Collegiate Dictionary 74 (1998).
The Taylor court found that "[a]pplication of a strict standard of review does not alter the plain meaning of `assault.'" Taylor, 140 Wash.2d at 242, 996 P.2d 571. Likewise, construing "attempt" strictly does not change this word's fundamental meaning. It can reasonably be concluded that the element of *250 "substantial step" is conveyed by the word "attempt" itself. Despite the failure to include an explicit reference to "substantial step" in the information, Borrero had notice of that element because the word "attempt" conveyed the same meaning and import.
The allegation that Borrero attempted to cause Lemieux's death put the defendant on notice that he could defend himself by showing that he did not take a substantial step (make an effort) to commit murder. The information sufficiently informed Borrero of the nature of the accusation against him so that he was able to prepare his defense to the crime charged.
Accomplice Liability Instruction
"The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld." State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). To instruct the jury in a manner that would relieve the State of this burden is reversible error. Id. at 714, 887 P.2d 396.
In the case before us, the trial court instructed the jury about accomplice liability in instruction 20, which states as follows:
A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing a crime.
The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
An accomplice may be tried for the crime, even though another person is not prosecuted.
CP at 55.
The trial court instructed the jury that an accomplice must have knowledge that his or her actions will promote or facilitate the commission of "a" crime rather than the statutory language of "the" crime as provided in RCW 9A.08.020(3)(a). The Roberts and Cronin courts held that for accomplice liability to attach, the defendant must not merely aid in any crime, but must knowingly aid in the commission of the specific crime charged. Roberts, 142 Wash.2d at 509-13, 14 P.3d 713; Cronin, 142 Wash.2d at 578-80, 14 P.3d 752.
Witnesses at Borrero's trial testified that before committing the charged crimes of kidnapping and attempted murder, the defendant also participated in the assault and robbery of Lemieux. Borrero argues that by relying on the erroneous instruction, the jury could have believed that his participation in the uncharged assault or robbery would trigger his liability as an accomplice for the charged crimes. Therefore, the jury could have found Borrero guilty of kidnapping and attempted murder as an accomplice to Anderson and Vaughn because he facilitated some other uncharged crime.
It is clear from the record that the jury considered the accomplice instruction. During deliberations, the foreman sent the following inquiry to the court: "Which instructions apply to which counts? Specifically instruction # 20, does it apply to all counts or only the attempted murder charge." CP at 31. Judge Fox responded, "Instruction No. 20 applies to both counts." Id.
From this exchange, it appears that despite the erroneous instruction, accomplice liability was considered only in terms of the charged crimes. The jury proceeded as though the proper instruction had been given.
Borrero's defense was that he was not present and was not involved with the kidnapping and attempted murder of Lemieux. If the jury found he was actually present, the testimony of Lemieux and Vaughn provides a sufficiency of the evidence to find Borrero *251 liable as a principal for both charged crimes. There was no allegation that Borrero was assisting from afar. If the jury had believed that he was not present, Borrero's defense would have required an acquittal. In either event, the use of the improper article in the jury instruction would be immaterial.
Under the facts of this case, the erroneous accomplice liability instruction was harmless because it did not relieve the State of its burden to prove every element of the crimes charged beyond a reasonable doubt.
Summary
In sum, we hold that Borrero was afforded adequate notice of the nature of the charges against him and that the erroneous accomplice liability instruction was harmless because it did not relieve the State of its burden to prove every element of the charged crimes. Therefore, we affirm Borrero's conviction and sentence for first degree kidnapping and attempted first degree murder.
SMITH, BRIDGE, OWENS, JJ., concurring.
MADSEN, J. (concurring in part).
I agree with Justice Sanders that under a strict construction review, the word attempt does not adequately describe the essential "substantial step" element. Even if the majority is correct that attempt somehow conveys a substantial step, the information is nevertheless insufficient because it fails to allege any facts that would constitute a substantial step. In State v. Leach, 113 Wash.2d 679, 782 P.2d 552 (1989), this court recognized that there are two requirements that must be met for an information to satisfy due process: (1) the charging document must allege the legal elements of the charged crime and (2) it must allege sufficient facts to support every element of the crime charged. Id. at 688, 782 P.2d 552. In Leach, we cited with approval Leonard v. Territory, 2 Wash. Terr. 381, 392, 7 P. 872 (1885), which set forth the requirements of "the essential elements rule [that] has always been the rule in this state."
"Under our laws an indictment must be direct and certain, both as regards the crime charged and as regards the particular circumstances thereof, when they are necessary to constitute a complete crime."
Leach, 113 Wash.2d at 688, 782 P.2d 552 (quoting Leonard, 2 Wash. Terr. at 392, 7 P. 872).
Because the information in this case fails to expressly list the legal element of substantial step, undisputedly an element of attempted murder, and fails to allege any factual circumstances that would support the element of a substantial step, I would reverse and dismiss the attempted murder charge without prejudice.
As to the accomplice liability instruction, I agree with Justice Ireland that the error is harmless in this case because the trial court clarified the defect in its response to the jury inquiry. I would affirm the first degree kidnapping conviction.
JOHNSON, J., concurs.
CHAMBERS, J. (concurring in part and dissenting in part).
I agree with the majority that the information provided Aaron Borrero with adequate notice of the charges against him. However, I believe that the erroneous accomplice liability instruction relieved the State of its burden to prove every element of the charged crimes, namely, facilitating the commission of "the" crime charged. I would therefore reverse and remand for a new trial without the flawed instruction.
Leslie Lemieux entered Kyle Anderson's house in South King County with a duffel bag containing 30 pounds of marijuana. Once inside Anderson's house, Lemieux testified that Borrero and another man pointed guns at him. Lemieux was forced face down and his hands were tied behind him with speaker wire by Borrero. Lemieux was blindfolded, the marijuana was removed from his duffel bag, and he was then stuffed into the bag. Lemieux was then stuffed into a Jeep Cherokee and driven around for five hours. Throughout this time, Lemieux talked with the driver, Michael Vaugh, whom Lemieux erroneously believed to be Borrero. Lemieux called Vaughn "Aaron" and Vaughn responded to that name to protect his own *252 identity. Finally, Lemieux was dumped from the duffel bag into the Yakima River in Kittitas County. Borrero denied any involvement at all in this sad course of events, including putting Lemieux into the Jeep, driving to Eastern Washington, or throwing Lemieux into the river.
Borrero was charged with kidnapping and attempted murder. The prosecution's theory was that Borrero participated in the entire criminal course of conduct. Witnesses testified that he participated in assault and robbery, although he was not charged with either.
Under Washington law, a person is an accomplice only if he or she solicits, commands, encourages, or requests the commission of a crime "[w]ith knowledge that it will promote or facilitate the commission of the crime." RCW 9A.08.020(3)(a) (emphasis added). Under an accomplice liability theory, a defendant may be charged as a principal in any crime that he or she facilitates. Accomplice liability must be proved for each crime.
Recently, this Court held that WPIC 10.51[1] erroneously instructed the jury to find a defendant guilty as an accomplice if he aids in the commission of "a" crime rather than "the" specific crime for which he is charged. State v. Roberts, 142 Wash.2d 471, 511, 14 P.3d 713 (2000); State v. Cronin, 142 Wash.2d 568, 578-79, 14 P.3d 752 (2000).
During Borrero's trial, in response to an inquiry during jury deliberations, the judge informed the jury that jury instruction 20 (the erroneous accomplice liability instruction, WPIC 10.51) applied to both counts.
Whenever a jury is instructed on more than one crime, an instruction that enables the jury to find the defendant guilty on the basis of participation in "a" crime would enable a guilty finding on all the charged crimes even if the jury believed that the accused facilitated only one of them. This is a material departure from our jurisprudence. For example, jury instruction 20 given to Borrero's jury stated in relevant part:
A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
....
(2) aids or agrees to aid another person in planning or committing a crime.
Clerk's Papers at 55 (emphasis added).
In this case, the jury may have believed that Borrero seized and bound Lemieux, but ended his participation at that point and did not accompany the men who threw Lemieux into the river. Under the instructions given, the jury could have found that, because Borrero aided in the commission of kidnapping, he was guilty as an accomplice in the attempted murder even if he neither knew of that crime nor participated in it. Similarly, under the instructions given, if the jurors believed Borrero participated in the murder, they could have found him guilty as an accomplice to the kidnapping. This would not only enable the jury to return a guilty verdict on a crime that the defendant did not aid in any way, but might also lead jurors to the erroneous belief that if the defendant facilitates the commission of one of the charged crimes, they must find him guilty as an accomplice of both. It would thus defeat the objective of requiring the jury to deliberate on both counts individually, substituting a principle Washington has rejected  that a defendant who is guilty as an accomplice to one of the charged crimes is guilty as an accomplice to all. See, e.g., RCW 9A.08.020(3)(a) (requiring knowledge of "the crime" for accomplice liability); Roberts, 142 Wash.2d at 510, 14 P.3d 713 (finding that the legislative history of the accomplice liability statute requires the mens rea of knowledge of the particular crime); State v. Rice, 102 Wash.2d 120, 125, 683 P.2d 199 (1984) (holding that the State must prove "general knowledge of [the defendant's] coparticipant's substantive crime").
The instructional error relieved the State of its burden of proving accomplice liability separately for each crime. That is an error of constitutional magnitude.

*253 If the instructions allowed the jury to convict [the defendant] without finding an essential element of the crime charged, the State has been relieved of its burden of proving all elements of the crime(s) charged beyond a reasonable doubt, and thus the error affected his constitutional right to a fair trial.
State v. Stein, 144 Wash.2d 236, 241, 27 P.3d 184 (2001).
Most constitutional errors can be harmless. Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). A jury instruction that omits an element of the offense is not a structural error infecting the whole trial process, and it therefore "does not necessarily render a criminal trial fundamentally unfair." Id. at 9, 119 S.Ct. 1827. However, an error of constitutional proportions is not harmless unless the appellate court is "`"able to declare a belief that it was harmless beyond a reasonable doubt."'" State v. Stephens, 93 Wash.2d 186, 191, 607 P.2d 304 (1980) (quoting State v. Burri, 87 Wash.2d 175, 182, 550 P.2d 507 (1976) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))). Therefore, I conclude that every time the erroneous accomplice liability instruction (WPIC 10.51) is given in connection with two or more charged crimes, the error cannot be harmless and per se reversal is required.
I disagree with the dissent, however, that the presence of the erroneous accomplice liability instruction requires automatic reversal of a conviction. In my view, when only one crime is charged and the jury is instructed on the elements of only one crime, the erroneous WPIC 10.51 instruction should be subject to a harmless error analysis. Where only one crime is charged, "a" crime may mean "the" crime. If Borrero had only been charged with attempted murder, and if the jury had only been instructed on the elements of attempted murder, and if there had been no evidence or argument concerning any other crime, then the erroneous accomplice instruction may have been harmless.[2] However, I disagree with my colleagues in dissent that we should speculate that a jury will seize "any" uncharged crime to convict under accomplice liability. Unless a jury has been charged as to the elements of another crime, where there is specific testimony or argument concerning a crime other than the charged crime without specific facts leading to a contrary conclusion, the supposition the jury might seize upon some petty offense to support a conviction of the charged crime under an accomplice liability theory is not supported by logic, reason, or common experience.
On the other hand, when the jury is instructed on a single charged crime, but other crimes are discussed, the jury may consider "a" crime to refer to the other crimes. See, e.g., State v. Cronin, 142 Wash.2d at 581, 14 P.3d 752 (referring to a jury inquiry as to whether the defendant had to know "`that he is assisting in a first degree assault or that he is promoting a crime of any kind'" (quoting Clerk's Papers)). Here, from the evidence, the jury might easily have speculated about other crimes, and concluded that because Borrero facilitated "a" crime of robbery or assault, he was guilty as an accomplice in the kidnapping and attempted murder. Therefore, applying a harmless error analysis to the facts and evidence of this case, I conclude that the error cannot be said to be harmless to Borrero beyond reasonable doubt. When the jury is instructed that a guilty verdict can be based on participation in "a" crime and more than one crime is charged, the erroneous accomplice liability instruction will always permit the jury to conclude accomplice liability for all crimes charged if they believe the defendant was facilitating "a" or any  crime charged. This contrasts sharply with the situation where only one crime is charged, which could well be harmless beyond a reasonable doubt.
I would therefore reverse and remand for a new trial.
SANDERS, J. (dissenting).
Unlike our majority, I would hold Borrero was charged improperly with attempted murder *254 by an insufficient information, and his jury instructions erroneously relieved the State of its burden to prove every element of the crimes charged beyond a reasonable doubt.
I. The Insufficiency of Borrero's Information
I agree a "substantial step" is an essential element of an attempt crime which must be included in Borrero's information to pass constitutional muster. I also agree since Borrero challenged the sufficiency of the information preverdict we must strictly construe his charging document to determine whether the "substantial step" element has in fact been included. I however disagree with the majority because it fails to apply the strict construction standard properly.
The verbatim text of the pertinent charging document in this case states:
That the defendants KYLE LAWRENCE ANDERSON and AARON EDWARD BORRERO, and each of them, in King County, Washington on or about March 19, 1997, with premeditated intent to cause the death of another person did attempt to cause the death of Leslie Lemieux, a human being;
Contrary to RCW 9A.28.030, 9A.32.030(1)(a), and against the peace and dignity of the State of Washington.
Clerk's Papers (CP) at 24 (Second Am. Information) (emphasis added).
As more fully discussed below, the emphasized portions of the charge illustrate three problems: (1) by only using the word "attempt," the State did not inform Borrero of the "substantial step" requirement, an essential element of an attempt crime in this state; (2) the State failed to allege sufficient facts to support the substantial step element; and (3) by citing to "RCW 9A.28.030," the State erroneously referred to the solicitation statute, not the attempt statute which is RCW 9A.28.020.[1]
Precedent provides considerable guidance on how to strictly construe an information for insufficiency determinations. In 1992, for example, we stated charging documents strictly construed "are not to be examined to determine whether the missing elements appear in any form, or by fair construction can be found, and the language must not be `inartful or vague' with respect to the elements of the crime." State v. Johnson, 119 Wash.2d 143, 149-50, 829 P.2d 1078 (1992) (quoting State v. Kjorsvik, 117 Wash.2d 93, 106, 812 P.2d 86 (1991)). Johnson held by strict construction an information charging unlawful delivery is constitutionally insufficient when it generally alleges the defendant "unlawfully" delivered instead of alleging the essential element that he "knowingly" delivered. Id. at 150, 829 P.2d 1078.
In 1995 the Court of Appeals provided other pertinent rules in State v. Bacani, 79 Wash.App. 701, 902 P.2d 184 (1995). The court conveyed that dictionary definitions and common understanding are not relevant for strict construction. Id. at 704-05. Bacani held a strict construction of "intent to steal" did not suffice to incorporate the essential element of attempted first degree robbery that someone other than the defendant had an ownership or possessory interest in the property taken, even though "steal" is defined in dictionaries and is commonly understood to mean the taking of another's property. Id. The court concluded:
The State charged Bacani with "unlawfully attempt[ing] to take [money], with intent to steal from" the victims. We are at a loss to understand what this could mean except that he tried to take their money from them. However, ... we are constrained to rule that, under Johnson's [State v. Johnson, 119 Wash.2d 143, 829 P.2d 1078 (1992)] strict construction test, the information charging Bacani with attempted first degree robbery was constitutionally deficient.
Id. at 705, 902 P.2d 184 (first and second alteration in original).
Strict construction was also applied by the appellate court in State v. Ralph, 85 Wash. App. 82, 930 P.2d 1235 (1997). The issue there was whether an information charging *255 the defendant with theft of a firearm was insufficient under a strict construction because it did not include the essential ownership element but instead only the word "steal." Following our case in Johnson, Ralph held:
The information need not use the exact words of a statute so long as the words used adequately convey the same meaning. Under the rule set forth in Johnson, the language in the information is strictly construed and facial deficiencies are not upheld.
Id. at 85, 930 P.2d 1235 (emphasis added) (citation omitted). While the court acknowledged a dictionary definition of "steal" appeared to convey the ownership element, a strict construction nonetheless rendered the information insufficient. Id. at 85-86, 930 P.2d 1235; see also State v. Phillips, 98 Wash.App. 936, 944, 991 P.2d 1195 (2000) (considering dictionary definition of "steal" when performing liberal, not strict, construction).
In 1999 the Court of Appeals again chimed in on how to strictly construe an information in the case of State v. Johnstone, 96 Wash. App. 839, 982 P.2d 119 (1999). "[W]e do not attempt to find the missing elements by construing the wording of the document." Id. at 844, 982 P.2d 119. "[T]he language must not be `inartful or vague' in setting out the elements of the crime." Id. (quoting Johnson, 119 Wash.2d at 149-50, 829 P.2d 1078). Again the court did not rely upon dictionaries or its common understanding to conclude the information was sufficient.
Notwithstanding this precedent we complicated matters considerably in State v. Taylor, a five to four decision. 140 Wash.2d 229, 996 P.2d 571 (2000). Attempting to charge fourth degree assault, the information in Taylor explicitly alleged the defendant assaulted the victim by pushing, kicking, and punching the victim in the face. Id. at 233, 996 P.2d 571. At issue was whether this language, strictly construed, sufficiently set forth the essential element of intent. Id. at 235, 996 P.2d 571. The majority concluded it was:
The charging document in this case contained language indicating intentional conduct. The complaint alleged that [Taylor] committed assault ... by "pushing, kicking and punching the victim in the face." Under either the strict standard of construction or the liberal standard of construction, the words of a charging document are viewed as a whole and construed according to common sense.
Id. at 243, 996 P.2d 571. Accordingly to the majority, "[o]ne does not, without intent, push, kick or punch another." Id. at 245, 996 P.2d 571.
Our most recent case analyzing the insufficiency of an information is State v. McCarty, 140 Wash.2d 420, 998 P.2d 296 (2000).[2] The issue in McCarty was whether an information alleging the defendant did "unlawfully conspire to deliver" methamphetamine, when liberally construed, sufficiently alleged the essential element that the purported agreement involved more than two people. Id. at 424, 998 P.2d 296. We held it did not because the information "fail[ed] on its face to set forth [this] essential ... element." Id. at 428, 998 P.2d 296 (emphasis added). "[A] document charging conspiracy to deliver a controlled substance must allege that persons involved outside the act of delivery took part in the conspiracy agreement." Id. at 426, 998 P.2d 296. In response to the dissenters' arguments, the majority noted "a constitutionally sufficient charging document must expressly state all essential elements of a crime, both statutory and nonstatutory to pass muster." Id. at 426 n. 1, 998 P.2d 296 (emphasis added) (citation omitted). The information failed to do so in McCarty and thus we dismissed the conviction without prejudice. Id. at 428, 998 P.2d 296.[3]
*256 The fact McCarty was a "liberal construction case" does not make it irrelevant to our analysis today; on the contrary, it becomes all the more relevant given its reasoning and result. Even though we were engaging in a liberal construction analysis, we still focused on the express language in the information and did not resort to dictionary definitions or our notion of the "common understanding" of the words used. Moreover, we found the information facially defective. Clearly we would have reached the same result had we been strictly construing the information.[4]
The last case deserving mention is the most recent Court of Appeals opinion in State v. Khlee, 106 Wash.App. 21, 22 P.3d 1264 (2001). In Khlee the defendant was charged with possession of a stolen firearm, an essential element of which includes the defendant's knowledge the firearm was stolen. Id. at 22-23, 22 P.3d 1264. The information, however, only alleged the defendant "did knowingly possess a .380 caliber pistol, a stolen firearm." Id. at 22, 22 P.3d 1264. After discussing Johnson, Ralph, and Bacani, the court held this language was not sufficient when strictly construed:
Applying the strict construction standard, the information is defective for failing to allege that Khlee knew the gun was stolen. The information simply alleges that Khlee knowingly possessed the firearm. This is not the same as saying that he possessed the gun knowing it to be stolen. One can knowingly possess a gun without knowing it to be stolen.
Id. at 25, 22 P.3d 1264.
A. Omission of "Substantial Step"
I posit the majority's application of the strict construction standard is inconsistent with the above cited precedent. Use of dictionary definitions (and synonyms from a thesaurus) to strictly construe an otherwise vague and inartful information lacks support from the overwhelming weight of authority. See, e.g., McCarty, 140 Wash.2d at 426-28, 998 P.2d 296; Taylor, 140 Wash.2d at 247-50, 996 P.2d 571 (Johnson, J., dissenting); Johnson, 119 Wash.2d at 149-50, 829 P.2d 1078; Khlee, 106 Wash.App. at 25, 22 P.3d 1264; Johnstone, 96 Wash.App. at 844, 982 P.2d 119; Ralph, 85 Wash.App. at 85-86, 930 P.2d 1235; Bacani, 79 Wash.App. at 704-05, 902 P.2d 184. In any event, resorting to such external sources cannot cure the fundamental flaw in the charging document  the essential element of a "substantial step" was omitted whereas the constitution requires it not be. On this basis alone we should reverse Borrero's conviction.[5]
Even if we were to ignore our most recent opinion in McCarty and other case law, as our majority does today, the majority must nonetheless come to grips with a principle discernible from the Taylor majority and Khlee. Those opinions indicate that if it is at all possible to imagine a scenario where behavior described in the information does not constitute a violation of the law sought to be enforced, then the information is insufficient. See Taylor, 140 Wash.2d at 245, 996 P.2d 571 ("One does not, without intent, push, kick or punch another."); Khlee, 106 Wash.App. at 25, 22 P.3d 1264 ("One can knowingly possess a gun without knowing it to be stolen.").
Under this approach the question here would be whether it is possible to imagine a scenario where one is "attempting" to murder another but has not yet taken a "substantial step" toward doing so. I submit the answer is yes. To attempt to commit the crime, for example, one may solicit the services of another. However, solicitation alone does not constitute a "substantial step." State v. Gay, 4 Wash.App. 834, 839-40, 486 P.2d 341 (1971). Similarly, when "attempting" to carry out the criminal act, a person may first purchase a map to find the route to the victim's house. However, such an act  merely preparatory as it is  does not amount to a "substantial step." See State v. Workman, 90 Wash.2d 443, 449, 584 P.2d 382 *257 (1978); see also 11A Washington Pattern Jury Instructions: Criminal 100.05 (2d ed. 1994) (WPIC).
The term "attempt" fails to reveal the key element of a "substantial step." If dictionary definitions are the majority's answer, I would direct it to Black's Law Dictionary:
"Attempt ... is the most common of the preliminary crimes. It consists of steps taken in furtherance of an indictable offence which the person attempting intends to carry out if he can. As we have seen there can be a long chain of such steps and it is necessary to have some test by which to decide that the particular link in the chain has been reached at which the crime of attempt has been achieved; that link will represent the actus reus of attempt ...."
Black's Law Dictionary 123-24 (7th ed.1999) (emphasis added) (quoting J.W. Cecil Turner, Kenny's Outlines of Criminal Law 79 (16th ed.1952)).
In Washington, the essential element of a "substantial step" is crucial to understand the test to determine the actus reus for an attempt. This is underscored by the fact other jurisdictions use different tests. Criminal law commentators have deduced numerous different formulations, the substantial step test used in Washington being just one of them. See, e.g., Joshua Dressler, Understanding Criminal Law § 27.06[B] (1995) (categorizing eight different tests); 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2(d) (1986) (categorizing four different tests). By merely using the word "attempt," any of these formulations could apply.
"Every act done with [the requisite] intent is not an attempt, for it may be too remote from the completed offence to give rise to criminal liability, notwithstanding the criminal purpose of the doer. I may buy matches with intent to burn a haystack, and yet be clear of attempted arson; but if I go to the stack and there light one of the matches, my intent has developed into a criminal attempt."
Black's Law Dictionary, supra, at 123 (quoting John Salmond, Jurisprudence 387 (Glanville L. Williams ed., 10th ed.1947)). Simply using the word "attempt" only identifies the actus reus problem; it does not identify the essential substantial step test used in this state to resolve it.
B. Facts of Substantial Step
The problem is further compounded by the State's failure to allege facts to support the substantial step element of the crime. "[A] charging document must allege sufficient facts to support every element of the crime charged." State v. Leach, 113 Wash.2d 679, 688, 782 P.2d 552 (1989).
A "statement of the acts constituting the offense is just as important and essential as the other requirements of the information, such as the title of the action and the names of the parties." State v. Royse, 66 Wash.2d 552, 557, 403 P.2d 838 (1965). The failure to do so is ground for reversal. Leach, 113 Wash.2d at 688, 782 P.2d 552; Royse, 66 Wash.2d at 557, 403 P.2d 838; State v. Unosawa, 29 Wash.2d 578, 188 P.2d 104 (1948); Leonard v. Territory, 2 Wash. Terr. 381, 391, 7 P. 872 (1885).
In Leach the charging document notified the defendant he was accused of committing public indecency under former RCW 9A.88.010 (1975). 113 Wash.2d at 684, 782 P.2d 552. The cited statute defines both misdemeanor and gross misdemeanor offenses, but the complaint did not specify whether the State sought a misdemeanor or gross misdemeanor conviction and it omitted the year of birth of one of the alleged victims. Id. Thus, the defendant was not put on notice that one of his victims was under the age of 14. Had he been provided with that information, he would have been able to determine that he was charged with a gross misdemeanor. The defendant appealed on the grounds that his information was constitutionally defective for failure to allege the essential elements of the charged crime. Id.
Reviewing the case law supporting the essential elements rule, Leach determined that in addition to adequately identifying the crime charged, a charging document also must allege facts supporting each element of the offense. Id. at 687-89, 782 P.2d 552. Thus, the court held the district court complaint was constitutionally defective and affirmed *258 dismissal of the defendant's public indecency conviction. Id. at 691, 782 P.2d 552.
Similarly in Royse, this court reversed the conviction of a defendant accused of second degree assault with the intent to commit a felony, where the information did not specify the felony he allegedly intended to commit, did not list its necessary elements, and did not allege sufficient facts to put the defendant on notice of the attempt charge. 66 Wash.2d at 553, 403 P.2d 838. The defendant had moved repeatedly to require the State to elect which felony or felonies the defendant was charged with having intent to commit, but the trial court had denied the motion. Id. at 554, 403 P.2d 838. On appeal, the defendant argued it was prejudicial error for the trial court to deny the defendant's motion because it was impossible to prepare a defense when he did not know what felony he was defending against. Id. at 555, 403 P.2d 838. This court agreed, emphasizing the lack of factual allegations that would have enabled the defendant to prepare his defense, stating:
This court has many times approved the statement by Judge Dunbar to the effect that the information must state the acts constituting the offense in ordinary and concise language, not the name of the offense, but the statement of the acts constituting the offense is just as important and essential as the other requirements of the information, such as the title of the action and the names of the parties.
Id. at 557, 403 P.2d 838.
In Unosawa this court reversed a manslaughter conviction, where the information failed to inform the defendant of one of the essential elements of manslaughter even though the defendant was charged additionally with committing an illegal abortion and the omitted element was alleged as one of the necessary elements of the abortion charge. 29 Wash.2d at 586, 188 P.2d 104. The dissent argued that in view of the abortion charge the defendant had notice of the omitted element of the manslaughter charge. Id. at 594, 188 P.2d 104 (Hill, J., dissenting in part). The majority disagreed, holding:
[T]he common understanding rule cannot be applied in any case, unless and until it is first determined that the information itself does charge a crime.
The facts stated in count No. 2 of the information, as amended, do not charge the crime of manslaughter, and appellant's motion in arrest of judgment, as to this count, should have been granted.
Id. at 589, 188 P.2d 104.
Finally, Leonard reversed a first degree murder conviction where the indictment which charged the assault and shooting to have been done purposely and of deliberate and premeditated malice but did not aver the killing itself to have been done purposely and of deliberate and premeditated malice and therefore did not "charge the crime conformably to the definition of the statute." 2 Wash. Terr. at 391, 7 P. 872
In the current case the charging document suffered from deficiencies similar to those in the above cited cases. Not only did the State fail to allege an essential element of the attempt charge against Borrero, but it also failed to provide factual allegations that would support this element. Thus, the appropriate remedy is a reversal of Borrero's conviction for attempted murder. Leach, 113 Wash.2d at 688, 782 P.2d 552; Royse, 66 Wash.2d at 557, 403 P.2d 838; Unosawa, 29 Wash.2d at 589, 188 P.2d 104; and Leonard, 2 Wash. Terr. at 391, 7 P. 872.
C. Citation to the Wrong Statute
Although the above reasons should be adequate to conclude the information is insufficient, there's more. After failing to expressly set forth the essential elements of the attempt crime and failing to provide factual allegations to support the attempt charge, the State mistakenly cited the solicitation statute, not the attempt statute. While an error in citation alone may not be grounds for reversing a conviction without a showing of prejudice, see CrR 2.1(a)(1), when combined with the other errors, the citation error here has more than mere technical significance. As mentioned above, the actus reus for purposes of solicitation by itself does not amount to a "substantial step" for attempt. *259 See Gay, 4 Wash.App. at 839-40, 486 P.2d 341.
D. Timely Objection
Finally, we must recall that to prevail on this issue, Borrero need not prove any prejudice (actual or otherwise) resulting from the State's omission. "Whether a defendant was prejudiced by a defective information is only to be considered if the information is challenged for the first time after a verdict." Johnson, 119 Wash.2d at 149, 829 P.2d 1078 (emphasis added) (citing Kjorsvik, 117 Wash.2d at 106, 812 P.2d 86; State v. Hopper, 118 Wash.2d 151, 155-56, 822 P.2d 775 (1992)). The reason we do not require a showing of prejudice is to encourage defendants not to raise the issue for the first time on appeal. Id. This incentive is appropriate because the State can freely amend an information anytime before verdict to make it constitutionally sufficient. Id.; see also CrR 2.1(d). This point is best made in Johnson, where we reversed even though we clearly believed the defendants suffered absolutely no prejudice whatsoever. 119 Wash.2d at 149, 829 P.2d 1078.
But Borrero made his motion to dismiss before verdict. Notwithstanding the trial court erroneously denied the motion, ruling:
The motions to dismiss the attempted murder in the first degree counts will be denied. I think the Rhodes [sic] case from the Court of Appeals does essentially control this decision.... In the Rhodes [sic] decision the court in its opinion makes reference to prejudice really being the key-stone of this analysis, and they don't use those words but that is implicit, and here there really isn't any prejudice at all. Everybody knows since the amended information this was an attempted murder charge.
Verbatim Report of Proceedings (VRP) (Mar. 9, 1998) at 9. This is plain error. Rhode pertained to a postverdict motion and therefore applied the liberal construction standard, which includes a prejudice requirement. State v. Rhode, 63 Wash.App. 630, 633-37, 821 P.2d 492 (1991). Under the Johnson preverdict standard applied in this case, Borrero is not required to prove prejudice.
While our majority does not clearly demand Borrero prove prejudice, it appears to imply as much. For example, it concludes its analysis with the statement: "[t]he information sufficiently informed Borrero of the nature of the accusation against him so that he was able to prepare his defense to the crime charged." Majority at 250. Unless the majority is considering whether Borrero was prejudiced by the information, why does Borrero's actual ability to prepare a defense even matter? Under Johnson, Borrero is entitled to relief even if he was an expert in criminal attempt law.
Borrero thoroughly argued a motion to dismiss before verdict. This motion put the State on notice of its failure to include the essential statutory element of a "substantial step" in the information. VRP (Mar. 5, 1998) at 105-06. Nevertheless, the State maintained the charging document was good enough as is and chose not to amend it to remove any constitutional suspicion. The State therefore risked strict construction review which does not require any showing of prejudice on Borrero's part. For these reasons the conviction for attempted murder must be reversed.
II. The Erroneous Accomplice Liability Instruction
An instruction that relieves the State of its burden to prove every essential element of an offense cannot be subject to harmless error analysis and is reversible per se. The accomplice liability instruction given here relieved the State of its burden to prove every essential element of the offenses charged. Consequently Borrero's convictions should be reversed and remanded for a new trial.
The accomplice liability instruction given in this case, instruction 20, provides as follows:
A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of a crime if, with knowledge that *260 it will promote or facilitate the commission of a crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing a crime.
The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
An accomplice may be tried for the crime, even though another person is not prosecuted.
CP at 55 (emphasis added).
Aside from the last sentence, which is irrelevant to the present issue, this instruction mirrors the language of WPIC 10.51. See 11 Washington Pattern Jury Instructions: Criminal (2d ed.1994). We have recently concluded, on two separate occasions, an accomplice liability instruction modeled on WPIC 10.51 is erroneous if it permits accomplice liability to attach when the defendant knows he is aiding in the commission of any crime as opposed to the crime with which he is charged. State v. Roberts, 142 Wash.2d 471, 511, 14 P.3d 713 (2000); State v. Cronin, 142 Wash.2d 568, 578-79, 14 P.3d 752 (2000).
Roberts was a death penalty case. Michael Roberts argued the accomplice liability instruction given at his trial, which referred to a crime as opposed to the crime, improperly allowed the jury to convict him of aggravated premeditated first degree murder if they found he had general knowledge that his confederate was going to commit any crime. Roberts, 142 Wash.2d at 509, 14 P.3d 713. We agreed and held while general knowledge of "the crime" is sufficient, "knowledge by the accomplice that the principal intends to commit `a crime' does not impose strict liability for any and all offenses that follow." Id. at 513, 14 P.3d 713. We concluded such an interpretation was contrary to the "the statute's plain language, its legislative history, and supporting case law." Id.
The plain language of the accomplice liability statute reads:
(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.
(2) A person is legally accountable for the conduct of another person when:
....
(c) He is an accomplice of such other person in the commission of the crime.

(3) A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
(i) solicits, commands, encourages, or requests such other person to commit it; or
(ii) aids or agrees to aid such other person in planning or committing it[.]
RCW 9A.08.020 (emphasis added); see also Roberts, 142 Wash.2d at 509-10, 14 P.3d 713. Thus, an accomplice liability instruction which refers to "a crime" rather than "the crime" is in direct conflict with the plain language of the accomplice liability statute. 142 Wash.2d at 510, 14 P.3d 713.
Moreover the legislative history surrounding the accomplice liability statute does not reflect an intention to create strict liability for accomplices. Id. The statute, which is based on section 2.06(3) of the Model Penal Code, "establishes a mens rea requirement of `knowledge' of `the crime.'" Id. at 510, 14 P.3d 713. "The comment to Model Penal Code § 2.06(3)(a), which is identical to RCW 9A.08.020(3)(a), requires the accomplice to `have the purpose to promote or facilitate the particular conduct that forms the basis for the charge' and states, `he will not be liable for conduct that does not fall within this purpose.'" Id. at 510-11, 14 P.3d 713 (quoting Model Penal Code § 2.06 cmt. 6(b) (1985)). An instruction which refers to "a crime" rather than "the crime" impermissibly allows a jury to impose strict liability on a defendant. Id. at 511, 14 P.3d 713.
Finally, we determined in Roberts that nothing in our case law supports the proposition *261 that an accomplice who intends to commit a crime is necessarily an accomplice to all crimes committed by his confederate. Id. at 511-13, 14 P.3d 713 (analyzing State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984); State v. Sweet, 138 Wash.2d 466, 980 P.2d 1223 (1999); State v. Hoffman, 116 Wash.2d 51, 804 P.2d 577 (1991); State v. Rice, 102 Wash.2d 120, 683 P.2d 199 (1984)).
Shortly after we decided Roberts, we issued our opinion in Cronin, 142 Wash.2d 568, 14 P.3d 752. There we again determined an accomplice liability instruction based on WPIC 10.51 which refers to "a crime" rather than "the crime" is erroneous because it is contrary to the plain language of the accomplice liability statute, its legislative history, and supporting case law. Id. at 578-79, 14 P.3d 752.
We specifically referenced Roberts and concluded, as we did there, "the fact that a purported accomplice knows that the principal intends to commit `"a crime"' does not necessarily mean that accomplice liability attaches for any and all offenses ultimately committed by the principal." Id. at 579, 14 P.3d 752 (citing Roberts, 142 Wash.2d at 513, 14 P.3d 713). Rather, our case law "supports imposing criminal liability on an alleged accomplice only so long as that individual has general knowledge of `"the crime"' for which he or she was eventually charged." Id. Thus an accomplice instruction that imposes liability if an individual has knowledge of "`a crime'" as opposed to "`the crime'" is deficient. Id. "The fact that the instruction was modeled on a Washington pattern instruction for a criminal case does not alter [the] conclusion." Id.
Under Roberts and Cronin, the instruction given here was clearly erroneous. It permitted the jury to convict Borrero for all crimes committed by his confederates so long the jury found he intended to aid in the commission of any single crime.
The State claims an erroneous accomplice instruction which permits the jury to convict a defendant as an accomplice if he knowingly participated in the commission of "a crime" as opposed to "the crime" is subject to harmless error analysis. Borrero contends such an error requires automatic reversal. Without any discussion, our majority simply assumes harmless error analysis applies. I disagree.
Independent review of the pertinent case law supports Borrero's position. I begin with State v. Rader, 118 Wash. 198, 203 P. 68 (1922). There, Ingram Rader was convicted of second degree murder and appealed. Id. at 199. The sole matter considered by this Court on appeal concerned certain instructions given the jury at trial. Id. The jury instruction for murder made no provision that the defendant could escape conviction if the killing was justified. Id. When we examined Rader's conviction we noted, "Murder in any form is the felonious killing of a human being. It is a killing without justification or excuse, yet all reference to this element is omitted by the court in its definition of murder in the first and second degrees." Id. at 203. Thus the instruction as given permitted the jury to convict the defendant irrespective of how justifiable his actions may have been. Id. We held the defendant was clearly entitled to have the element of justification brought before the jury and therefore we reversed. Id. at 204, 207.
Ten years later we cited Rader with approval in State v. Hilsinger, 167 Wash. 427, 9 P.2d 357 (1932). Defendant Hilsinger, like Rader, was convicted of second degree murder under an instruction which erroneously failed to mention where the killing was "excusable or justifiable" the defendant was not guilty of murder. Id. at 433-34, 9 P.2d 357. We observed the appellant "`was entitled to have the element of justification called to the attention of the jury in its definitions of the degree of murder.'" Id. at 434, 9 P.2d 357 (quoting Rader, 118 Wash. at 204, 203 P. 68). We concluded the trial court "committed reversible error in leaving out of its instruction defining murder in the second degree the elements of excuse or justification." Id. at 434, 203 P. 68 (emphasis added).
Similarly, in State v. Emmanuel, 42 Wash.2d 799, 817, 259 P.2d 845 (1953), we found a jury instruction given at trial erroneously omitted an essential element of the offense of bribery. We observed: "`In instructing a jury as to the statutory definition *262 of the crime with which a defendant stands charged, all of the pertinent elements contained in the statute should be set forth.'" Id. at 820, 259 P.2d 845 (quoting Hilsinger, 167 Wash. at 434, 9 P.2d 357). We concluded our prior decisions in Rader and Hilsinger required reversal. Id. at 821, 259 P.2d 845.
State v. Allen, 101 Wash.2d 355, 678 P.2d 798 (1984), echoed this principle. We observed, "It is clear that the trial court must instruct the jury on every element of the crime." Id. at 358, 678 P.2d 798 (citing Emmanuel, 42 Wash.2d at 819, 259 P.2d 845). We further noted, "Failure to inform the jury that there is an intent element is thus a `fatal defect' requiring reversal." Id. (citing State v. Carter, 4 Wash.App. 103, 110-11, 480 P.2d 794 (1971)).
More recently we concluded in State v. Byrd that "[t]he State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld," and "[i]t is reversible error to instruct the jury in a manner that would relieve the State of this burden." 125 Wash.2d 707, 713-14, 887 P.2d 396 (1995). We held specific intent was an essential element of the crime with which Byrd was charged and, because the instruction given relieved the State of its burden to prove such intent, reversal was required. Id. at 716, 887 P.2d 396.
State v. Eastmond, 129 Wash.2d 497, 919 P.2d 577 (1996), reconfirmed our commitment to the rule in Byrd. "By relieving the State of its burden of proving every essential element beyond a reasonable doubt, the omission of an element of the crime produces [reversible error]." 129 Wash.2d at 503, 919 P.2d 577 (citing Byrd, 125 Wash.2d at 714, Allen, 101 Wash.2d at 358, 678 P.2d 798).
We specifically addressed whether a jury instruction which omitted an essential element of the crime charged was subject to harmless error analysis in State v. Smith, 131 Wash.2d 258, 930 P.2d 917 (1997). Smith was convicted of conspiracy to commit first degree murder. Id. at 259, 930 P.2d 917. On appeal the State conceded Smith was convicted under an erroneous instruction but argued the error was harmless. Id. at 262-63, 930 P.2d 917. We rejected this argument because while the jury instruction purported to set forth all the essential elements of the crime charged, in reality it did not. Id. We reversed the conviction and observed, "Our holding today is in accord with prior cases out of this court holding that failure to instruct on an element of an offense is automatic reversible error." Id. at 265, 930 P.2d 917 (emphasis added). Finally, we noted these opinions were consistent with the then recent Supreme Court decision in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
This Court applied the rule of automatic reversal for failure to instruct on every element of the offense charged in State v. Jackson, 137 Wash.2d 712, 976 P.2d 1229 (1999); Cronin, 142 Wash.2d 568, 14 P.3d 752; and State v. Bui (Cronin's companion case). These decisions are particularly germane to the case at bar because each involved an erroneous instruction on accomplice liability.
Michael and Laurinda Jackson were convicted of felony murder of their foster daughter Breighonna. Jackson, 137 Wash.2d at 719, 976 P.2d 1229. Laurinda appealed her conviction on several grounds, one of which was that the accomplice liability instruction given at trial misstated the law. Id. at 720, 976 P.2d 1229. We agreed the instruction was erroneous and concluded the error required reversal. Id. at 727, 976 P.2d 1229. We held, "In the final analysis, the instruction relieved the State of its burden of proving every essential element of guilt beyond a reasonable doubt .... The instruction, therefore, is not susceptible to harmless error analysis." Id. (citing Eastmond, 129 Wash.2d at 503, 919 P.2d 577; Byrd, 125 Wash.2d at 713-14, 887 P.2d 396).
Our most recent case on point is Cronin. Like Borrero, Cronin was convicted of premeditated first degree murder on the basis of accomplice liability. Cronin, 142 Wash.2d at 577, 14 P.3d 752. At trial the jury was erroneously instructed it could find Cronin guilty as an accomplice to first degree murder so long as he was an accomplice to "a crime" (as opposed to "the crime") committed by his confederate. Id. at 579, 14 P.3d 752. Like here, on appeal the State argued even if the instruction given was erroneous, such *263 error was harmless. Id. We disagreed and concluded such error was not subject to harmless error analysis. Id. at 580, 14 P.3d 752. "`"The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. It is reversible error to instruct the jury in a manner that would relieve the State of this burden."`" Id. (quoting Jackson, 137 Wash.2d at 727, 976 P.2d 1229 (quoting Byrd, 125 Wash.2d at 713-14, 887 P.2d 396)).
We further observed, "In order to convict Cronin as an accomplice to premeditated murder, the State had to prove beyond a reasonable doubt that Cronin had general knowledge that he was aiding in the commission of the crime of murder." Id. at 581-82, 14 P.3d 752 (citing Rice, 102 Wash.2d at 125, 683 P.2d 199; Davis, 101 Wash.2d 654, 682 P.2d 883). However, the accomplice instruction given permitted the jury "to convict Cronin of premeditated murder merely if it found that he knew he promoted or facilitated `the commission of a crime.'" Id. at 582, 14 P.3d 752. The error effectively "relieved the State of the burden of having to prove beyond a reasonable doubt that Cronin knew he was facilitating the crime of murder, [and thus] the instructional error cannot be deemed harmless." Id.
We reached the same conclusion in Cronin's companion case, State v. Bui, 142 Wash.2d at 581, 14 P.3d 752. Bui was convicted on three counts of first degree assault on the basis of accomplice liability. Id. at 573, 14 P.3d 752. Again, the accomplice instruction referred to "a crime" rather than "the crime." Id. at 572, 14 P.3d 752. We found, "the jury instruction may have allowed the State to secure a conviction without having to prove beyond a reasonable doubt that Bui knew he was facilitating the commission of the crime of assault. Alleviating the State of this burden cannot be said to be error that is harmless." Id. at 581, 14 P.3d 752.
The specific facts of the Bui case also help demonstrate why a rule of automatic reversal is well grounded. The jury in Bui, after being provided the erroneous accomplice liability jury instruction, asked the trial court judge whether "a" crime meant the crime charged or "a crime of any kind." Id. at 573, 14 P.3d 752. This query alone serves as a recent example of how the improper use of "a" in the instruction in fact misleads juries to speculate about whether the defendant had knowledge he was promoting or facilitating the commission of any crime  charged or uncharged. In situations like here where juries may speculate about uncharged crimes, our majority provides no adequate remedy.
While the majority provides no authority for its position that harmless error applies, my review of the case law suggests possible support for their position includes: State v. Hartley, 25 Wash.2d 211, 170 P.2d 333 (1946); State v. Thompson, 38 Wash.2d 774, 232 P.2d 87 (1951); State v. Martin, 73 Wash.2d 616, 440 P.2d 429 (1968). However, none of those cases specifically held an error which relieves the State of its burden to prove every essential element of an offense is subject to harmless error.
Hartley does suggest a first degree murder instruction which erroneously omitted the words "`unless it is excusable or justifiable' " was "harmless error, if error at all." 25 Wash.2d at 225, 170 P.2d 333. However this statement was made only as an aside and only after we specifically concluded, "It is thus apparent that the jury was fully and adequately instructed as to all the elements of murder in the first degree." Id.
Similarly, while carefully selected language from Thompson seems to support the State's position, the actual holding of the case does not. Thompson involved an instructional error which did require reversal. We only speculated the instruction "might not have constituted prejudicial error" if there had been no conflict in the evidence, i.e., if Thompson's confession had specifically included the omitted element. 38 Wash.2d at 779, 232 P.2d 87. However that was not the issue presented and we did not address it further.
One of the instructions issued in Martin failed to require the jury to find the defendant had knowledge of a certain fact. 73 Wash.2d at 625, 440 P.2d 429. Nevertheless we concluded the error was harmless because "`knowledge of any particular fact may *264 be inferred from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry.'" Id. at 626, 440 P.2d 429 (quoting former RCW 9.01.010 (1909), repealed by Laws of 1975, 1st Ex.Sess., ch. 260). This is consistent with our later conclusion in State v. Deal, 128 Wash.2d 693, 911 P.2d 996 (1996) relating to permissive inferences. This differs markedly from the situation presented here where the State is relieved entirely of its duty to prove every essential element of the offense.
When considering the legal authority for both sides, it appears the State has the weaker argument. While we have certainly applied harmless error analysis to erroneous jury instructions (see Deal, 128 Wash.2d 693, 911 P.2d 996; State v. Bailey, 114 Wash.2d 340, 787 P.2d 1378 (1990); State v. Handran, 113 Wash.2d 11, 775 P.2d 453 (1989)), it is equally certain such analysis does not apply when, like here, the instruction relieves the State of its duty to prove all essential elements of the offense. We have consistently held an instructional error which operates to relieve the State of its burden to prove every element of the offense constitutes reversible error. The pedigree of this rule dates back to the early 1920s and we are bound to follow it.
The foregoing review reveals the path we must follow when an instructional error relieves the State of its burden to prove every element of the offense charged beyond a reasonable doubt: the error requires a new trial. Cronin, 142 Wash.2d at 582, 14 P.3d 752 ("[W]e have concluded that there was an instructional error that justifies a new trial for Bui on all of his convictions and a new trial for Cronin on his first degree murder conviction ....").
Here the State was relieved of its burden to prove every essential element of the crimes for which it ultimately obtained Borrero's convictions. The improper use of "a" in Borrero's accomplice liability instruction allowed the jury to convict him for kidnapping or murder by speculating about whether he knew he was promoting or facilitating the commission of any crime whether charged or not. With the prosecution of Borrero for the charged crimes, sufficient evidence was also introduced supporting the conclusion Borrero committed two uncharged crimes, namely assault and robbery. This evidence suggested Borrero and others held guns to another person's body and then proceeded to rob that person. VRP (Mar. 2, 1998) at 125-27; VRP (Mar. 4, 1998) at 123-26. Under the erroneous accomplice liability instruction, it was therefore very possible the jury could have found Borrero was assisting in "a crime," e.g., the uncharged assault or robbery, and used this finding to conclude he was guilty as an accomplice to the charged crimes.
This requires reversal.
The majority applies a harmless error analysis without explanation and concludes the instructional error was harmless. Majority at 259-260. However, even if harmless error is applied to this case, the State has failed to rebut the presumption of prejudice by meeting their burden of proving beyond a reasonable doubt that the error in this case did not contribute to the verdict. See Sullivan v. Louisiana, 508 U.S. 275, 279-80, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); Chapman v. California, 386 U.S. 18, 22-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Smith, 131 Wash.2d 258, 266, 930 P.2d 917 (1997); State v. Easter, 130 Wash.2d 228, 242-43, 922 P.2d 1285 (1996). We are not in a position to second guess the minds of each juror.
Moreover, as acknowledged by the majority, the jury asked the trial judge during deliberation whether the accomplice liability instruction applied to both charged counts, and the judge told them that it did. CP at 31. From this the majority reasons the judge's response actually cured the error, remarking "[t]he jury proceeded as though the proper instruction had been given." Majority at 259. This claim entirely overlooks the fact that the response only says the instruction applies to the charged crimes  it does not state the instruction does not apply to uncharged crimes for which there was evidence.[6] The only possible relevance the jury note has is that it is shows the jury was indeed focused on the erroneous accomplice *265 liability instruction. This heavily weighs against any possible argument the State has that the error was harmless beyond a reasonable doubt.
If the harmless error review even applies, and I do not believe it should, I would hold the State has not proved the instructional error harmless beyond a reasonable doubt.
III. Conclusion
Borrero was charged with an information that fell below the constitutional minimum because that document failed to set forth an essential element of his attempted murder charge. In addition, the jury instructions relieved the State of its burden to prove every element of the crimes charged beyond a reasonable doubt.
I would therefore reverse both convictions and must dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] The Roberts and Cronin decisions were issued a few days after the Court of Appeals' decision on remand in Borrero.
[2] In contrast, under the liberal standard applied to a challenge raised for the first time on appeal, it was held that the word "unlawfully" in the information sufficiently alleged the intent to steal element of the crime of robbery. Kjorsvik, 117 Wash.2d at 108-11, 812 P.2d 86.
[1] 11 Washington Pattern Jury Instructions: Criminal 10.51 (2d ed.1994).
[2] When only one crime is charged, instructing the jury on a lesser included offense of the charged crime may also be harmless.
[1] The majority failed to note this latter error, much less analyze it, notwithstanding Borrero argued the point in his briefing. See, e.g., Br. of Appellant at 24-25.
[2] We initially remanded Borrero to the Court of Appeals to reconsider in light of McCarty (not Taylor). See State v. Borrero, No. 68592-4, 141 Wash.2d 1010, 10 P.3d 407 Order at 1 (filed July 17, 2000). However, our majority fails to discuss McCarty.
[3] We also commented the mere use of the term `conspiracy' does not `necessarily impl[y] ... that any member of the conspiracy took a substantial step in furtherance of the agreement. McCarty, 140 Wash.2d at 427, 998 P.2d 296 (alteration in original).
[4] Of course, the same is not true of liberal construction cases where a court finds the charging document sufficient. In such cases, it remains possible a strict construction could produce a different result.
[5] Putting aside the question whether a resort to dictionary definitions and thesauri is appropriate, I note no definition or synonym used by the majority mentions the essential "substantial step" element.
[6] The State also appears to miss this point entirely. See Supp. Br. of Resp't at 15-16.